FRANCIS E. CARROLL, Respondent, *v.* THE STATEN ISLAND RAILROAD COMPANY, Appellant.

The duty imposed by law upon the carrier of passengers to carry them safely, as far as human skill and foresight can go, exists independently of contract. For a negligent injury to a passenger an action lies against the carrier, although there be no contract, and the service he is rendering is gratuitous; and whether the action is brought upon contract or for failure to perform the duty, the liability is the same.

One violating the statute prohibiting travel upon Sunday (1 R. S., 628, § 70), is not without the protection of the law. The carrier owes to him the same duty as if he were lawfully traveling, and is responsible for a failure to perform it, the same in the one case as in the other.

*It seems*, that a carrier has a right to contract for the carriage of passengers on Sunday, and is not required, before receiving them, to ascertain the purposes for which they are traveling, and having entered into such a contract, without knowledge that the purpose of the other party is unlawful, he cannot escape from liability for a negligent performance of the contract on that ground. He cannot take the benefit of the contract and be exempted from its responsibilities.

While a carrier of passengers is not an insurer of their safety, and does

not undertake that the vessel or vehicle, or the machinery he employs, is absolutely free from defects, he is held to the exercise of the utmost skill and care in the construction and management of both.

When carrying by the agency of steam, and injury is occasioned to passengers thereby, he cannot escape liability, unless it appears that the accident happened from causes beyond his control, and to which neither his own negligence nor that of his employes, nor the negligence of the manufacturer of the machinery in any way contributed.

The act of Congress of 1871 (16 U. S. Stat. at Large, 440), for the better protection of the lives of passengers on board of vessels propelled by steam, prohibits, by implication, the use of a greater pressure of steam than that allowed by the inspector's certificate; and under the provision of section 43 of said act, making the master and owner of the vessel liable if any damage is sustained by a passenger in consequence of any neglect or failure to comply with the provisions of the act, in case a greater pressure is used and an explosion occurs, which would not have happened if the pressure had been kept within the prescribed limits, the carrier is liable for the resulting injury.

The liability of the owner under said section is not confined to cases where he is chargeable with personal default or neglect to comply with the act, but extends also to cases where the injury is caused solely by the neglect of the master or persons employed upon the vessel.

The giving of this remedy was incident to the general power of Congress over the subject, and the provision is valid.

The act of 1851 (9 U. S. Stat. at Large, 635), limiting the liability of ship-owners does not affect the liability imposed by said section.

The inspectors are not authorized by the act of 1871 to adjust the safety-valves so as to admit of a greater pressure upon a boiler than the certificate allows to be used, and the fact that they have so done is not a defence to an action for an injury occasioned thereby.

An action to enforce the liability imposed by said section is properly brought in the Supreme Court of the State.

(Argued February 25, 1874; decided September 22, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought to recover damages for injuries sustained by plaintiff, occasioned by the explosion of the boiler upon defendant's steam ferry-boat, the Westfield.

On Sunday, July 30, 1871, plaintiff went on board said ferry-boat, which plied between the city of New York and

Staten Island. It was then lying at its dock in New York, with steam up ready to start, but while still lying there its boiler exploded and plaintiff was injured. Plaintiff's fare was paid.

The referee found, among other things, that the immediate causes of such explosion were a pressure of steam of not less than twenty-seven pounds to the square inch, and a weakness of the boiler caused by a longitudinal crack or cracks, which extended nearly through from the inside to the outside of the iron plate or shell. That, in June previous to the said accident said boiler had been tested under the laws of Congress, enacted in that behalf, with a hydrostatic pressure of thirty-four pounds to the inch, and that a certificate was thereupon given by the government inspectors, allowing the use of twenty-five pounds of steam-pressure to the inch. That the said boiler being about nine years old, required on that account greater caution and care in the management of steam, and that the defendants, by their engineer, did not exercise the care they were bound to exercise, in allowing a pressure in excess of the amount justified by the previous test and certificate.

That the plaintiff had taken passage on the said boat for Staten Island, which was six miles distant, and was on the boat at the time of the said explosion, for no definite purpose except innocent recreation and the enjoyment of the sea air. And, as inferable from said facts, that defendant did not exercise all the care possible in providing for the safety of passengers. That, at the time of the injury, the defendant sustained to the plaintiff the relation, and was charged with the obligations, of a carrier of passengers.

As matter of law, he found that the laws of the State for the observance of the Sabbath afforded no ground of defence to the action, and that the defendants were responsible for the defect and weakness of their steam boiler, and for the want of due care.

A supplemental finding was made in pursuance of an order of the court, as follows:

"That the crack in the steam boiler mentioned in said report was a latent one, the existence of which was not known to the defendant. The evidence also preponderates in favor of the conclusion, and I therefore find, that prior to the explosion of said boiler the existence of said crack could not have been discovered by the exercise of the highest skill, foresight and care, or by any test known and practiced by experts in the business of making, maintaining or managing steam boilers."

*W. A. Beach* for the appellant. Defendant is not responsible for a latent defect in its boiler not discoverable by the exercise of human skill, foresight or care. (*McPadden* v. *N. Y. C. R. R. Co.*, 44 N. Y., 480; *Caldwell* v. *N. J. Stbt. Co.*, 47 id., 290.) The acts of Congress and the rules and regulations under which the United States inspectors act in inspecting boilers are not rules of evidence in this court. (*Moore* v. *Moore*, 47 N. Y., 292, 468; *People* v. *Yates*, 43 id., 40; *Brown* v. *Buff. R. R. Co.*, 22 id., 191.) The burden of proof is upon plaintiff to show negligence affirmatively. (*Caldwell* v. *N. J. Stbt. Co.*, 47 N. Y., 291; *Lamb* v. *C. and A. R. R. Co.*, 46 id., 271.) The referee erred in finding, without evidence, that the pressure was "not less than twenty-seven pounds." (*Sheldon* v. *Sheldon*, 51 N. Y., 354.) The accident having happened on Sunday, plaintiff cannot recover. (*Dike* v. *Erie R. Co.*, 45 N. Y., 113, 118; *Powell* v. *Layton*, 2 N. R. [5 B. & P.], 365; 1 R. S. [1st ed.], 675, § 70; 2 R. S. [5th ed.], 936; 1 Edm., 628, § 70; *Swann* v. *Broome*, 3 Burr., 1595, 1599; Potter's Dwarris, 464–466; *Lindenmuller* v. *People*, 33 Barb., 548; *People* v. *Ruggles*, 8 J. R., 290; *Watts* v. *Van Ness*, 1 Hill, 76; *Smith* v. *Wilcox*, 19 Barb., 581; 24 N. Y., 353; *Fennell* v. *Riddler*, 5 B. & C., 406 [11 E. C. L.]; *Jones* v. *Hughes*, 5 S. & R., 299, 302; *Stanton* v. *Met. R. Co.*, 14 Al., 485; *Hinckley* v. *Inhab. of P.*, 42 Me., 89; *Fisher* v. *Howard*, 5 N. R., 118; 11 Jur. [N. S.], 305; 34 L. J., 42; *Atkinson* v. *Sellers*, 5 C. B. [N. S.], 442; *Taylor* v. *Humphreys*, 17 C. B. [N. S.],

539 [112 E. C. L.]; *Peplow* v. *Richardson*, L. R. [4 C. P.], 168; *Cratty* v. *City of Bangor*, 57 Me., 423; *Taylor* v. *Humphreys*, 10 C. B., 429 [100 E. C. L.]; *Gregg* v. *Wyman*, 4 Cush., 322, 324; *Whelden* v. *Chappel*, 8 R. I., 230; *Phalen* v. *Clark*, 19 Conn., 421; *Simpson* v. *Bloss*, 7 Taunt., 246; *Northrup* v. *Foot*, 14 Wend., 248; *Dung* v. *Parker*, 8 Alb. L. J., 330; *Lord* v. *Chadbourne*, 42 Me., 429; Mass. Gen. Stat., chap. 84, § 2; *Tilcock* v. *Webb*, 56 Me., 100; *Parker* v. *Latner*, 60 id., 528; *Wallace* v. *Cannon*, 38 Ga., 199; *Hunt* v. *Bell*, 1 Bing., 1; *Yisarri* v. *Clement*, 3 id., 432; *Finn* v. *Donohue*, 35 Conn., 216; *Meyers* v. *Munrath*, 101 Mass., 366.) Plaintiff's illegal journey negatived all acts toward creating a contract relation with defendant. (1 Rolle Abr., 3; *Calyes' case*, 8 Coke, 32; 41 N. Y., 530; *Moffat* v. *Bateman*, L. R. [3 P. C.], 115.) The exceptions to the refusal of the referee to find upon material questions of fact in accordance with the requests are properly before this court. (Sup. Ct. Rules, 41; *Van Slyke* v. *Hyatt*, 46 N. Y., 259; *Beck* v. *Sheldon*, 48 id., 365.) This case falls within the exclusive admiralty jurisdiction of the United States courts. (*Waring* v. *Clarke*, 5 How. [U. S.], 441; *Jackson* v. *Magnolia*, 20 id., 296; *The Commerce*, 1 Black, 574; *The Hine* v. *Trevor*, 4 Wall., 555; *Ins. Co.* v. *Dunham*, 11 id., 1; *Walker* v. *Tr. Co.*, 3 id., 153; *Chamberlain* v. *W. Tr. Co.*, 44 N. Y., 305; *Baird* v. *Daly*, 4 Lans., 426; *Chisholm* v. *N. Tr. Co.*, 61 Barb., 385; 9 U. S. Stat. at Large, 635; 10 id., 61; 16 id., 440.) Defendant, as owner of the Westfield, was not made liable by the acts of 1852 and 1871 for injuries to a passenger caused by neglect of the crew in its management. (*Moore* v. *Am. Tr. Co.*, 24 How. [U. S.], 1–38; *Walker* v. *Tr. Co.*, 3 Wall., 153.)

*D. Pratt* for the respondent. Plaintiff was not traveling, within the meaning of the statute for the observance of Sunday. (*Hamilton* v. *City of Boston*, 14 Al., 475; 10 C. B. [N. S.], 429.) The fact that injury was sustained on Sunday constituted no defence to this action. (Broome's

Legal Max., 554; *Wetherell* v. *Jones*, 3 B. & A. L., 221; *Merrett* v. *Earle*, 29 N. Y., 115; 1 Hilt. on Torts, 148, 160.) The fact that a person is a wrong-doer does not discharge another from due and proper care toward him. (*Keewhasken* v. *C., C. and C. R. R. Co.*, 3 O. [N. S.], 172; *N. H. S. and Tr. Co.* v. *Vanderbilt*, 16 Conn., 428; 17 Wend., 496; Broome's Legal Max., 655; *Carolus* v. *Mayor*, 6 Bosw., 15; *Etchberry* v. *Lacielle*, 2 Hilt., 40; *Nodine* v. *Doherty*, 46 Barb., 59; *Mahoney* v. *Cook*, 26 Penn., 342; *Bradley* v. *Rees*, 14 Al., 20; *Cox* v. *Cook*, id., 65; 25 N. H., 67; 17 id., 34; 2 Pars. on Con., 21, 26, 262.) It is no defence to the action that the explosion was caused by a crack in the boiler which could not be detected. (*Alden* v. *N. Y. C. R. R. Co.*, 26 N. Y., 102; *Hegeman* v. *West. R. R. Co.*, 3 Kern., 9; *Caldwell* v. *N. J. Stbt. Co.*, 47 N. Y., 582; *Wyckoff* v. *Queen's Co. F. Co.*, 52 id., 32; *Sharp* v. *Gray*, 9 Bing., 457; S. C., 2 M. & S., 621.) Congress having jurisdiction to pass laws regulating the management of steam vessels navigating the high seas, such laws are binding upon the owners of the vessels, and those suffering damage from their violation can sue in the State courts. (*Caldwell* v. *N. J. Stbt. Co.*, 47 N. Y., 282, 292.)

ANDREWS, J. This action is brought to recover damages for injuries sustained by the plaintiff in consequence of the explosion of the boiler of the ferry-boat Westfield, plying between the city of New York and Staten Island, while lying at the dock in the city of New York, on Sunday, July 30, 1871. The Westfield was engaged on that day in making regular trips between New York and Staten Island, for the carriage of passengers; and the running of ferry-boats on Sunday was a part of the regular business of the defendant.

The plaintiff went upon the Westfield shortly after one o'clock of the day mentioned, with the design of going to Staten Island, for the purpose, as the referee finds, of innocent recreation and the enjoyment of the sea air. He paid the usual fare on entering the boat, and soon after, and within a

few minutes of the time when the boat was to leave the dock, the boiler exploded. Several of the passengers were killed, and many others, including the plaintiff, were injured.

The point was taken on the trial, and is urged on this appeal, that the plaintiff cannot maintain this action, for the reason that he was, at the time of the injury, engaged in an unlawful act, viz., traveling on Sunday, in violation of the statute which prohibits travel on that day unless in certain excepted cases, and under a contract with the defendant which was illegal, in that it related to the unlawful act of the plaintiff, and was entered into by him as a means of enabling him to transgress the law. Such a contract, it is said, the law will not enforce, and the defendant incurred no obligation, and owed no duty by reason of it to the plaintiff, upon which he can found a right of action. The objection to the recovery here stated assumes and admits that the explosion of the boiler was attributable to the negligence of the defendant; and it also assumes that the plaintiff's right of action has its essential basis in the contract between the parties, created by the payment of fare on the one side, and the undertaking to carry on the other. It must be admitted, I think, that the plaintiff was traveling in violation of the statute. He left the hotel where he was stopping, for the purpose of going to Staten Island, and in the course of the journey took passage in the Westfield. He was not going in a case of necessity or charity, or for any purpose within the exceptions of the statute. He was traveling within the general meaning of the word, and certainly within its meaning as used in the Sunday law. The plaintiff, therefore, was violating the law. But the defendant had a right to carry him, and to enforce the payment of the usual compensation, if payment was refused, notwithstanding the illegal purpose of the plaintiff in going, if it was unknown to the defendant. This, I think, results necessarily from the character of the defendant's business. It exercises a franchise granted by the State to maintain and operate a ferry between New York and Staten Island. It is not prohibited by its

charter from running it on Sunday. Indeed, the public convenience requires that ferries between cities, or places densely populated, separated by rivers or narrow water channels, should be run on Sunday. The statute authorizes travel on that day in cases of necessity and charity, and in going to and from church, and for other purposes; and for these permitted purposes large numbers of people travel on Sunday. Contracts to carry persons who are permitted to travel must be valid. The proprietors of ferries cannot know the purpose of those who seek conveyance on Sunday, and it would be impracticable to require that they should ascertain it before receiving persons as passengers. The defendant, therefore, is entitled to demand compensation for the carriage of passengers on Sunday, although, in fact, they may be traveling illegally. There is no evidence that the defendant, when it received the plaintiff as a passenger, knew that he was traveling in violation of law.

The contract between the parties was not in a broad or general sense illegal or void. It is one the defendant had a right to make and to enforce against the plaintiff. Can the defendant, under such circumstances, having entered into a contract which he might lawfully make, escape from liability for a negligent performance on the ground that the motive and purpose of the other party in making it were unlawful? May he take the benefit of the contract and be exempted from its responsibilities? Does this case constitute an exception to the rule that the obligation of a contract must be mutual; and may one party resist performance and at the same time exact it from the other?

But we deem it unnecessary to decide the question, which was argued with great ability by counsel, touching the liability of the defendant in the action, treating it as founded upon the contract between the parties. The gravamen of the action is, the breach of the duty imposed by law upon the carrier of passengers, to carry safely, so far as human skill and foresight can go, the persons it undertakes to carry. This duty exists independently of contract, and although there is no contract

in a legal sense between the parties. Whether there is a contract to carry, or the service undertaken is gratuitous, an action on the case lies against the carrier for a negligent injury to a passenger. The law raises the duty out of regard for human life, and for the purpose of securing the utmost vigilance by carriers in protecting those who have committed themselves to their hands. In *Bretherton* v. *Wood* (3 Brod. & Bing., 54), which was an action brought against ten defendants, as proprietors of a coach, for injuries sustained by the plaintiff, a passenger, in consequence of negligent driving, the jury found a verdict against eight of the defendants, and in favor of the other two. On error, the judgment was affirmed, and DALLAS, C. J., said: "If it were true that the present action is founded on contract, so that to support it a contract must have been proved, the objection would deserve consideration. But we are of opinion that the action is not so founded, and that on the trial it could not have been necessary to show that there was any contract; and, therefore, that the objection fails. The action is on the case, against a common carrier, upon whom a duty is imposed by the custom of the realm, or in other words, by the common law, to convey and carry their goods and passengers safely and securely, so that by their negligence or fault no injury happens. A breach of this duty is a breach of the law, and for this breach an action lies, founded on the common law, which action wants not the aid of a contract to support it." And in *Philadelphia and Reading R. R. Co.* v. *Derby* (14 How. [U. S.], 483) GRIER, J., speaking of the duty of a common carrier, says: "This duty does not result alone from the consideration paid for the service. It is imposed by law even when the service is gratuitous." (See, also, *Allen* v. *Sewall*, 2 Wend., 338; *Bank of Orange* v. *Brown*, 3 id., 158; *Steamboat* v. *King*, 16 How. [U. S.], 474; *Nolton* v. *Western R. R.*, 15 N. Y., 444; *Gillenwater* v. *Mad. and In. R. R. Co.*, 5 Indc., 339; *Farwell* v. *Boston R. R.*, 4 Met., 49; Redfield on Railways, 210; Pierce Am. R. R. Law, 477.)

The liability of the carrier is the same, whether the action

is brought upon contract or upon the duty, and the evidence requisite to sustain the action in either form is substantially the same, and when there is an actual contract to carry, it is properly said that the liability in an action founded upon the public duty is coextensive with the liability on the contract.

This case, therefore, is not within the principle of many of the cases cited, which forbid a recovery upon a contract made in respect to a matter prohibited by law, or for a cause of action which requires the proof of an illegal contract to support it. (*Northrup* v. *Foot*, 14 Wend., 248; *Watts* v. *Van-Ness*, 1 Hill, 76; *Smith* v. *Wilcox*, 24 N. Y., 353.)

The relation of carrier and passenger existed between the parties. The plaintiff went upon the Westfield to be carried to Staten Island, and the defendant received him on the boat for that purpose. That this relation was entered into, the payment and receipt of fare is unequivocal evidence. It is a distinct question, whether the law will enforce the general obligations of the carrier to the same extent, in this case, as though the injury to the plaintiff had happened on some day other than Sunday. If, conceding the liability of the defendant had the injury occurred on some other day, a recovery is denied in this action, it must be on the ground that to allow it would contravene the general policy of the statute prohibiting travel on that day; and that the duty which the law in general imposes upon carriers, to carry safely, does not exist in respect to wrong-doers who are traveling in violation of the statute. It is certainly a startling proposition, that the thousands and tens of thousands of persons who travel on business or for pleasure on Sunday, upon railroads and steam and ferry-boats in this State are at the mercy of incompetent or careless engineers and servants, and that there is no remedy for loss of life or limb resulting from their negligence. Can it be said that the object of the statute would be promoted by such a rule? I think that this cannot be affirmed, and at least, that courts cannot say that unlawful traveling would be thereby prevented or even discouraged. Those who travel in public conveyances on Sunday do not consider in advance

whether the carrier will be liable if they are injured through his negligence.

The policy of the law, moreover, has always been to protect life and limb, by the severest penalties, against injury from the wrongful acts of others. A wrong-doer is not without the protection of the law. A man may keep a dog for the necessary defence of his house, or use other lawful means for the protection of his person or property, but if the dog is fierce and dangerous, or if he negligently set a spring-gun on his premises, and a trespasser is injured, the latter may recover, as the case may be, against the owner of the one or the person who set the other. (*Reed* v. *Holbrook*, 4 Bing., 628; *Loomis* v. *Ferry*, 17 Wend., 197.)

Is the public policy, which seeks to protect human life, to give way in the case of carriers on the Sabbath, and are they to be relieved from responsibility to those who may happen to be unlawfully traveling on that day? We think not. The negligence of the defendant was as wrongful on Sunday as on any other day, and was as likely to be followed by injurious or fatal consequences. The plaintiff's unlawful act did not in any sense contribute to the explosion. If he had not been on the boat the boiler would have exploded, and the negligence would have been the same, although the plaintiff would not have been involved in the consequences. To hold the carrier exempt from liability, because the plaintiff was violating the Sunday statute, would be creating a species of judicial outlawry, to shield a wrong-doer from a just responsibility for his wrongful act.

The language of the court in the case of *Mahoney* v. *Cook* (26 Penn., 342), where the defendant sought to escape from liability for an injury to the plaintiff's boat, caused by an unlawful obstruction placed in the stream by the defendant, on the ground that the plaintiff was running his boat on Sunday contrary to law, is pertinent. The court say: "We should work a confusion of relations, and lend doubtful assistance to morality, if we should allow one offender against

the law to set off against the plaintiff that he is a public offender." The plaintiff went upon the Westfield in the execution of an unlawful purpose, but he was there upon the invitation and with the license of the defendant, and was injured by the culpable negligence of its servants. The statute in question declares that any person being of the age of fourteen years offending against its provisions shall forfeit one dollar for each offence. The law subjects the offender to a trivial punishment. The legislature has not seen fit to mark the violation of the statute as a grave offence against the State. The plaintiff violated the law, and he thereby incurred the forfeiture which the statute declares. The court is asked to subject him to a far severer punishment, viz., the forfeiture of the right to indemnity for an injury resulting from the defendant's negligence. The action is not founded upon contract; and the principle that courts will not lend their aid to enforce the performance of illegal contracts has no application. Nor can relief be denied on the ground that a recovery would tend to encourage unlawful traveling on Sunday, for it cannot, I think, be shown that the denial of a remedy against the carrier would, as a natural or probable consequence, tend to limit travel on that day. I am of opinion, for the reasons here indicated, that the fact that the plaintiff was at the time of the injury traveling contrary to the statute, is no defence to this action. The courts of Massachusetts and Maine, and perhaps of some other States, have taken a different view; but the principle here affirmed is supported by the case cited from Pennsylvania and by the Supreme Court of the United States, in *Phila., etc., R. R. Co.* v. *Towboat Co.* (23 How., 218), and is, in my judgment, in accordance with the reason and equity of the law.

The referee found that, in June, previous to the accident, the boiler of the Westfield had been tested under the law of Congress enacted in that behalf, with a hydrostatic pressure of thirty-four pounds to the inch, and that a certificate was thereupon given by the government inspectors allowing the use of twenty-five pounds of steam-pressure to the inch, and

that the boiler, being then about nine years old, required, on that account, greater care and caution in the management of the steam; and that the defendant did not exercise the care it was bound to exercise, in allowing a pressure of steam in excess of the amount justified by the previous test and certificate. He further found that the immediate causes of the explosion were a pressure of steam of not less than twenty-seven pounds to the square inch, and a weakness of the boiler caused by a longitudinal crack or cracks, which extended nearly through from the inside to the outside of the iron plate or shell. He also found that the existence of the crack in the boiler could not have been discovered by the exercise of the highest skill, foresight or care, or by any test known or practiced by experts in the business of making, maintaining or managing steam-boilers; and he found, as a conclusion of law, that the defendant was responsible for the defect and weakness of the steam-boiler and for the want of due care, as set forth, in his findings of fact.

If the sole cause of the explosion was the defect in the boiler, disconnected with any negligence or violation of law, in the management of the steam, the defendant would not be liable. Carriers of passengers are not insurers of the safety of persons whom they carry; nor do they undertake that the vessels or vehicles which they use, or that the machinery they employ, are absolutely free from defects. They are held to the exercise of the utmost skill and care in the construction and management of both; and when they undertake to carry by the dangerous agency of steam, and injury is occasioned to passengers thereby, they cannot escape liability, unless it appears that the accident happened from causes beyond their control and to which neither the negligence of the carrier or of the manufacturer of the machinery, or those employed to manage it, contributed. That a carrier of passengers is not an insurer of their safety was explicitly held in *Christian* v. *Gregg* (2 Camp., 79), and has since been settled doctrine of the law. Some remarks, which seem adverse to this view, were made by the learned judge

who delivered the opinion in *Alden* v. *N. Y. C. R. R. Co.* (26 N. Y., 102), but the subsequent cases show that it was not the intention of the court to depart from the established doctrine upon the subject. (*McPadden* v. *N. Y. C. R. R. Co.*, 44 N. Y., 478; *Caldwell* v. *N. J. Steamboat Co.*, 47 id., 290; see, also, *Redhead* v. *Mid. R. R. Co.*, L. R. [2 Q. B.], 412; L. R. [4 Q. B.], 379.)

If the crack in the boiler was, as the referee found, undiscoverable upon examination, or by the application of any tests known or practiced, and if no presumption that the boiler was defective was created by the fact that it had been in use for several years, then the fact that the defect existed, without which the explosion would not have happened, would not alone have justified a recovery. And the material additional question in the case and upon which it depends is, whether the use of a greater pressure of steam than was allowed by the certificate of the government inspectors, connected with the indisputable fact that if the pressure had been kept within the limit fixed by the certificate the explosion would not have happened, renders the defendant liable for the resulting injury.

Congress, in the exercise of a conceded jurisdiction over the subject, in 1838 passed an act to provide for the better security of the lives of passengers on board of vessels propelled, in whole or in part, by steam (5 Stat. at Large, 304), which included provisions for the inspection, by officers appointed for that purpose, of the boilers and machinery of such vessels. It was made the duty of owners to cause such inspection to be made, and licenses were granted only after obtaining the inspectors' certificate. The system of government supervision over steam vessels initiated by this act was greatly expanded by subsequent legislation in furtherance of the same policy, and especially by the amendment of 1852 (10 Stat. at Large, 61), and in February, 1871, an act was passed covering the whole subject, which was the law in force when the explosion on the Westfield occurred. (16 Stat. at Large, 440.) This act contains

numerous provisions in great detail respecting the construction, equipment and management of steam vessels. The feature of compulsory inspection contained in the previous acts was retained; and the act provides that, upon inspection, a certificate shall be made by the inspectors and be filed with the collector or chief officer of the customs, who is directed to give to the owner or master of the vessel three certified copies, two of which are required to be put up in the vessel and the other, the statute declares (§ 31), shall be retained by the master or owner "as evidence of the authority thereby conferred." The eleventh section provides that, in making the inspection of boilers, the inspectors shall subject them to a hydrostatic test, and shall allow as a working power of each new boiler a pressure of only three-fourths the number of pounds to the square inch to which it shall have been subjected by the hydrostatic test and found to be sufficient therefor; but they may fix the working pressure at less than three-fourths of the test pressure if, in their opinion, safety requires it. The inspectors are also required to satisfy themselves that the safety-valves are of suitable dimensions, sufficient in number and well arranged (one of which may, if necessary in the opinion of the inspectors to secure safety, be taken wholly from the control of all persons engaged in navigating the vessel and secured by the inspectors); and they are also required to satisfy themselves that the weights of the safety-valves are properly adjusted so as to "allow no greater pressure in the boilers than the amount prescribed by the inspection certificate." By the fortieth section a pecuniary penalty is imposed, and also imprisonment, not exceeding five years, in the discretion of the court, upon any person who shall intentionally load or obstruct the safety-valves, whereby the boiler may be subjected to a greater pressure than the amount allowed by the inspector's certificate.

The forty-third section declares, that whenever any damage is sustained by any passenger or his baggage, from fire, collision or other cause, the master and the owner of the

vessel or either of them, and the vessel, shall be liable to each and every person so injured to the full amount of damage, if it happens through any neglect or failure to comply with the provisions of the law, or through known defects or imperfections of the steaming apparatus, or of the hull; and the captain, mate, engineer and pilot are also declared to be liable if the injury happens through their carelessness, negligence or willful misconduct, or their neglect or refusal to obey the provisions of the act as to navigating the vessel.

The act contains no express prohibition against using steam-pressure beyond the amount specified in the certificate, but such prohibition is necessarily implied from the provisions to which I have referred, taken in connection with the general purpose and tenor of the act. Nor does the act declare that the use of a higher pressure is negligence; but it declares that any neglect or failure to comply with the act, resulting in injury, gives a right of action for the damages sustained. It raises a statutory liability, founded on the omission to obey the law where such disobedience caused the injury. I see no ground upon which the power of Congress to make such an enactment can be assailed. It was incident to its general power over the subject to give a remedy by action against the carrier for injuries sustained by passengers, resulting from his violation of the law designed for their protection.

The learned counsel for the defendant, upon the argument, insisted that the liability of the owner, under the forty-third section, was confined to cases where he was chargeable with personal default or neglect in not complying with the act, and does not extend to cases where the injury was caused solely by the neglect of the master, or persons employed upon the vessel.

I am of opinion that this is not the true construction of the section. The act was not intended to limit the common-law liability of ship-owners, as carriers of passengers. (47 N. Y., 291.) The object of the act, as its title indicates, was to

provide additional safeguards and better security for the lives of passengers on steam vessels ; and to secure the observance of the law, and the exercise of a vigilant supervision and care in respect to the construction, equipment and management of steam vessels by the owners, they were charged with an absolute liability, if from any neglect or failure to comply with the law, passengers sustained injury. The act provides that inspectors shall establish rules to be observed by steam vessels in passing each other, and, by the forty-eighth section, lights of different colors are to be carried in certain defined positions. The forty-third section includes injuries from collisions, and if a collision should happen from a failure to comply with the rules established by the inspectors for the passing of vessels, or from an omission to keep or show the proper lights, it could not be denied, I think, that the owner would be liable for an injury to a passenger from the collision, under that section, although the actual fault was that of the master or mariners, and not of the owner.

The act of March 3, 1851 (9 Stat. at Large, 635), to limit the liability of ship-owners, etc., does not aid the defendant. That act was passed for the encouragement of American ship-building and to enable American ship-owners to compete, in the carrying of goods, with English ship-owners, who enjoyed under English statutes the same exemptions from liability which were extended to the owners of American vessels by the act of 1851. ( *Walker* v. *Transportation Co.*, 3 Wall., 153.) This act and the act of 1871 did not have their origin in the same policy, nor were they designed to accomplish similar objects ; and a narrow construction, in favor of ship-owners, of a statute enacted to secure the safety of passengers, is not justified on the ground that their common-law liability as carriers of goods had, by a prior statute, made for the purpose of assimilating our legislation on the subject to that of England, been to some extent limited.

The fact that the inspectors arranged one of the safety-

valves so as to allow of a pressure on the boiler of twenty-seven pounds to the inch — being two pounds in excess of the amount of working pressure allowed by their certificate — was not a defence in this action. The inspectors are not authorized by the act of 1871 to adjust the safety-valves so as to admit of a greater pressure than the certificate allows to be used. It seems to have been done in this case under the erroneous supposition that the act of July 27, 1866 (14 Stat. at Large, 227), was then in force. By the third section of that act one or more additional safety-valves were to be placed by the inspectors on steam boilers, and loaded to a pressure not exceeding two pounds " above the working pressure allowed." The object of this provision, as the evidence tends to show, was to provide for unavoidable fluctuations of the steam beyond the prescribed pressure. In this case the steam was allowed to rise beyond the limit in the certificate, when it was not in any sense necessary or unavoidable. I am of opinion that the defendant is liable for the injury sustained by the plaintiff by virtue of the forty-third section of the act of 1871, and that an action to enforce this liability was properly brought in the State court. (*Dougan* v. *Champlain Transportation Co.*, 56 N. Y., 1; and *Cook* v. *Whipple*, Court of Appeals, 1873.[*])

The judgment should be affirmed, with costs.

All concur except FOLGER and RAPALLO, JJ., not voting.

Judgment affirmed.