WILLIAM M. TEBO, Respondent, *v.* HENRY GREGORY JORDAN et al., Appellants.

1. SHIPPING — SEAWORTHINESS — COMPETENT PILOT. While the provision of section 4401 of the United States Revised Statutes, which requires coastwise sea-going steam vessels not sailing under register, except on the high sea, to be under the control of a pilot licensed by the steamboat inspectors, should be complied with, it cannot be said as matter of law that such a vessel, which requires the services of a competent pilot to render her seaworthy, is unseaworthy merely because her pilot is unlicensed, provided he is otherwise qualified.

Reported below, 73 Hun, 218.

(Argued October 29, 1895; decided November 26, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made at the November term, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Everett Masten* for appellants. Plaintiff wholly failed to prove performance of the agreement on his part, and in compliance with defendants' requests the trial court should either have dismissed the complaint or directed a verdict for defendants at the close of the testimony. (*The Farnsworth*, 6 Fed. Rep. 307; *Taft* v. *Carter*, 59 Barb. 67; *The Gratitude*, 25 Fed. Rep. 160; *Hayes* v. *Ball*, 51 Penn. St. 142; *The Margaret*, 94 U. S. 494.) The failure to have a licensed pilot on board the tug was a breach of the charter party upon the part of the plaintiff, and relieved the defendants from all obligation to continue the employment of the tug. (*Tebo* v. *Jordan*, 67 Hun, 395; U. S. R. S. §§ 4399, 4401, 4408, 4427, 4454, 4493; *Butler* v. *Boston*, 130 U. S. 527; *Manchester* v. *Massachusetts*, 139 U. S. 240; *Laubheim* v. *De K. N. S. Co.*, 107 N. Y. 228; *Secord* v. *S. P. R. R. Co.*, 18 Fed. Rep. 221; *Flanigen* v. *W. Ins. Co.*, 7 Penn. St. 306; *Adams* v. *Fitzpatrick*, 125 N. Y. 124.)

*William W. Goodrich* for respondent. A steam tug is not a common carrier, and is only bound for reasonable skill, care and diligence. (*Caton* v. *Rumney*, 13 Wend. 387; *The Thomas Kiley*, 5 Benedict, 307.) The plaintiff's counsel conceded at the trial that the charter party impliedly warrants the seaworthiness of the tug, and this seaworthiness covers not only the boat, machinery and equipments, but also the competency and skill of her officers for the service in which they are engaged, and these conditions were exactly fulfilled by the plaintiff. (*Laubheim* v. *De K. N. S. Co.*, 107 N. Y. 228; *Secord* v. *S. P. R. R. Co.*, 18 Fed. Rep. 221.) The stranding resulted from the fact that a schooner suddenly tacked across the course of the *Haviland*, that she had to slow up to avoid the schooner, and that the tide carried her out of her course. This is a clear peril of the seas. No negligence is shown on the part of the *Haviland*. (*The Adriatic*, 107 U. S. 516; 2 Arnold's Ins. §§ 297, 301; *Hale* v. *W. Ins. Co.*, 2 Story C. C. R. 176; U. S. R. S. § 4233.) The court properly refused to dismiss the complaint upon the ground

that the vessel was unseaworthy because she had no licensed pilot on board. (*The Alcalde*, 30 Fed. Rep. 137; *Carroll* v. *S. I. R. R. Co.*, 58 N. Y. 126; *Harrison* v. *Marshall*, 4 E. D. Smith, 271; *Wood* v. *Erie Ry. Co.*, 72 N. Y. 196; *Flanigen* v. *W. Ins. Co.*, 7 Penn. St. 306.)

Haight, J.   This action was brought to recover the balance due on a contract for the use and hire of a steam tug.

On October 23, 1888, the defendants chartered from the plaintiff the steam tug B. F. Haviland until the first day of May, 1889, at the price of $2,200.00 per month. The plaintiff was not to be liable for the damages resulting from the dangers of the sea, and either party could terminate the contract on giving thirty days' notice.

The tug went into the service of the defendants and was engaged in towing coal barges until December 8, 1888, when they gave notice to the plaintiff that the Haviland would not be employed by them longer on account of the stranding on December 2, 1888, of the coal barges in tow by the tug. The plaintiff refused to accept the discharge of the vessel and to cancel the charter until the thirty days' notice provided for by the contract had expired. This controversy arises out of the claim of the plaintiff to recover under the charter for the use of the vessel for the thirty days after the notice was given.

Under the charter the plaintiff doubtless was deemed to undertake to furnish a seaworthy vessel, and for the purposes of this case we shall assume that to be seaworthy it required the services of a competent pilot. What is a competent pilot? The defendants claim that he must be licensed by the United States inspector of steamboats, whilst the plaintiff insists that the license adds nothing to his competency and skill, and that a vessel is just as seaworthy in the hands of an unlicensed as a licensed pilot, provided he be equally skilled and experienced. This question is sharply presented by the requests to charge, and is the only one that we deem it necessary to here consider.

The Revised Statutes of the United States, section 4401,

require coastwise, sea-going steam vessels not sailing under register, when under way, except on the high sea, to be under the control and direction of a pilot licensed by the inspectors of steamboats. A failure to comply with the provisions of the statute subjects the offender to a penalty of $100.00 for each offense. This statute is founded upon principles of pub lic policy, and is in aid of the owners and shippers as well as the passengers, and is designed to furnish qualified and com petent pilots to masters of vessels arriving from foreign ports, and thus prevent the intrusting of a vessel and cargo to incompetent and unqualified persons. The position of a pilot is one of great responsibility, and his duties at times are grave and important, requiring a skilled, trusty and experi enced man. Occasions, however, may arise when it is not convenient or possible to procure the services of a licensed government pilot, and the master may be compelled to pro ceed without such a pilot. It will be observed that the statute does not impose a liability for damages sustained for a failure to employ a licensed pilot. It only imposes the penalty men tioned, which may be excused when the master has discharged his whole duty. The General Term speaks of the statute, and we think aptly, as not unlike the statutes or municipal ordinances prescribing the speed of trains in thickly settled localities, a violation of which is evidence but not proof of negligence, and being evidence only may be rebutted.

Parsons, in his work on Marine Insurance, volume 1, at page 384, says: " So as to pilotage, the ship is unseaworthy if she is without a pilot where usage and the reason of the case require that she should have one, whether in entering or leav ing a port, and yet if a vessel sails to a port where it is not always possible to obtain a pilot, then the law only requires that the master should use all reasonable efforts to obtain one, and if such efforts are made, the want of success does not make the ship unseaworthy in any sense which discharges the insurers. If a pilot be necessary and a person, falsely representing himself as one, is in good faith and without gross negligence received as such, there is no breach of the war-

ranty of seaworthiness, *nor is there if the master or some one else on board can direct the ship over the pilotage grounds and has sufficient skill to perform the duty as a pilot should perform it, nor should we say on general principles that the neglect to receive a pilot where one was required to be taken by a law of the port necessarily made the ship unseaworthy.*"

In *Flanigen* v. *The Washington Insurance Company* (7 Penn. St. 306) ROGERS, J., after referring to the act of Congress and the Pennsylvania statute with reference to pilots, says: "We have come to the conclusion that there is nothing in the statutes which makes it obligatory upon the owner or master of a vessel, whether engaged in the foreign or coasting trade, to employ a pilot. This proposition being thus established there is an end of the argument based as it is on the supposition that the act is imperative. The argument is founded on the hypothesis that there is a statutory unseaworthiness prescribed, that failing or omitting to comply with the provisions of the act is a breach of an implied warranty in the policy which avoids it, and, further, that there is a penalty imposed which renders the voyage illegal. * * * It is not my intention to deny that it is part of the implied warranty of seaworthiness that there should be on board the vessel at the time the risk commences not only a sufficient crew and a master of competent skill and ability to navigate her, but if she sails from a port where there is an establishment of pilots, and the nature of the navigation requires one, that the master should take a pilot on board. (*Phillips* v. *Headlam*, 2 Barn. & Ad. 380.) This as a general proposition is true, with some exceptions. It is not necessary in all cases to take a pilot without regard to the burden of a vessel or the nature of the trade. In 1 Emerigon, 402, it is laid down that a captain who knows the place to which he is bound is not obliged to employ a coast pilot. These matters must be regulated by the custom of the port, and hence the necessity of inquiring into the custom, which can be done only through the medium of a jury. Is it customary or necessary for a vessel engaged in the coasting trade of the burden of the one in question to take

a pilot when the master, in the opinion of the owner, has competent skill to conduct her to the ocean? That the river and bay of Delaware is pilot ground for all vessels engaged in the foreign or coasting trade is most true, but it is made so, not by force of the act of 1803, but by the usage of the trade or port. * * * That the usage may be modified by statute ·may be conceded, but not to the extent of creating a statutory seaworthiness."

In the case of *Boston Towboat Company* v. *The Charlotte* (51 Federal Reporter, 455) there were cross libels arising from a collision in the Patapsco river, between the coal barge Lone Star in tow of the steam tug Mercury and the steamer Charlotte. It was contended that presumption of fault against the tug was to be drawn from the fact that her master did not have a pilot licensed for the Chesapeake bay and its tributaries, but it was held that the master of the tug was competent for the duties he was performing, and that the fact that he did not have a pilot's license was immaterial.

In *The Blue Jacket* (144 U. S. 371) a collision occurred between the ship the Blue Jacket and the steam tug Tacoma near Ediz Hook light, in the straits of Fuca, in the territory of Washington. It was held that the tug was not at fault for the reason that its mate had no license, he being competent and having faithfully performed his duties. (See, also, *McDowell* v. *General Mutual Insurance Company*, 56 American Decisions, 619; *Hays* v. *Millar*, 18 American Reports, 445; *Keeler* v. *Fireman's Insurance Company*, 3 Hill, 250; *Carroll* v. *Staten Island Railroad Company*, 58 N. Y. 126; Patterson's Railway Accident Law, section 40.)

Whilst we do not wish to be understood as approving of all that has been said in the cases referred to, it is quite apparent that the general trend of the authorities is to the effect that a vessel is not as a matter of law unseaworthy because it is navigated by an unlicensed pilot, provided he is competent, experienced and otherwise qualified, and, whilst we think that the requirements of the statute are wholesome and should be faithfully complied with, yet the rule adopted by the courts

in the cases referred to appears to us to be reasonable and just, and has our assent. It consequently follows that, unless the stranding of the barges was owing to the incompetency of the plaintiff's pilot, or that such stranding would not have occurred if a licensed pilot had been on board, the defense of the defendants must fail. Upon these questions the evidence is to some extent conflicting. The facts have been determined by the jury and its verdict has been approved by the General Term. The evidence bearing upon the stranding after the barges had passed Handkerchief light vessel, and the testimony bearing upon their grounding whilst entering Boston harbor, have been considered and discussed in the courts below, where the facts were open for consideration. It is sufficient to here say that the evidence was of such a character as to justify the submission to the jury of these questions of fact, and that the evidence is sufficient to sustain its verdict to the effect that the accidents were in consequence of the perils of the sea, and not because of the failure to employ a competent pilot.

The judgment should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.