Stephen McPadden, Respondent, *v.* The New York Cen-tral Railroad Company, Appellant.

Although railroad companies are bound to exercise the utmost care and vigilance for the safety of their passengers, they are not held to an abso-lute warranty that the passengers shall not be injured, rendering them liable in any event, in the absence of negligence.

If they are bound to provide, for the transportation of passengers, a roadway and train free from defect, irrespective of the question of negligence, this rule should not be so extended as to render them liable for the *vis major* of extreme cold, by which a sound rail is broken, and which could not have been anticipated or avoided by any human foresight.

If the passenger claims that the rail was broken before the train reached it, he is called upon to show the fact by evidence. The mere fact that ano-ther train has passed over the road a short time before, does not present any question that can properly be submitted to a jury.

*Alden* v. *New York Central Railroad Company* (26 N. Y., 102), considered and explained.

(Argued January 13; decided May 6, 1871.)

Appeal from a decision of the General Term of the Su-preme Court in the seventh district, upon exceptions there heard in the first instance, granting a new trial.

This action was brought to recover for injuries sustained by the plaintiff, while a passenger upon the defendant's road. The cause was tried at the Rochester circuit, in January, 1865; and it appeared, among other things, that, on the 5th day of January, 1864, the plaintiff took passage on a train at Roch-ester going westerly, intending to go to Knowlesville. The train stopped at Brockport, and there met a train coming east. About half a mile west of Brockport the two passenger cars of the train going west were thrown from the track, and the car in which the plaintiff was riding was overturned, and he was injured. The train going west was not under full head-way, going at the rate of about twenty-five miles per hour. The train going east passed the place of the accident at the rate of twenty-five to thirty miles per hour.

The accident was caused by a broken rail, a piece of the

rail, about four feet in length, being broken in three or four pieces. All the witnesses who testified upon the subject testified that the rail was a good, sound and perfect rail, and in all respects properly placed and fastened, and they attributed the breaking to the coldness of the weather, it being a very cold morning. A track watchman went over the track three miles west of Brockport, starting at three o'clock that morning, and a train followed him west in about an hour. He then returned over the road to Brockport, reaching there a little before six o'clock, a short time before the accident. After the train passed east, he had no time to go over the road again before this train went west. When he went over the road, he found it in order. The plaintiff's witnesses testified that all the cars were off from the track but the locomotive. The defendant's witnesses testified that the passenger cars and the hind wheels of the baggage car were off the track. The conductor and engineer of the train going eastward testified that they did not notice any jolt, at the place of the accident, of their train, and that, if the rail had been broken and displaced by their train, they would have noticed it. The engineer of the train going west testified that he did not discover that any rail was displaced, and would have discovered it, if one had been displaced, before his engine passed over; and the conductor of this train testified that he could feel the jog when a rail was displaced. This testimony of the conductors and engineers was uncontradicted.

At the close of the evidence, the counsel for the defendant moved for a nonsuit, upon the ground that there was no proof of negligence or omission of duty on the part of the defendant, but that there was clear evidence that every precaution to insure safety to passengers had been taken. The counsel for the plaintiff then asked to go to the jury upon the question whether the rail was broken before the train going west came upon it. The court refused permission to him to do so, and nonsuited the plaintiff, and his counsel excepted, but did not request to go to the jury upon any other question.

The General Term made an order granting a new trial, and

the defendant appealed from such order to this court, stipulating for judgment absolute in case the order should be affirmed.

The case below is reported, 47 Barbour, 247.

*A. P. Laning*, for the appellant.

*James C. Cochrane*, for the respondent, insisted that the plaintiff made out a *prima facie* case. (*Stokes* v. *Saltonstall*, 12 Peters, 181; *Christie* v. *Griggs*, 2 Campb., 79.) The defendant was bound to furnish a road worthy vehicle. (*Alden* v. *N. Y. C. R. R. Co.*, 26 N. Y., 102.) It was a question for the jury whether the rail was broken before the train came upon it. (*Wolf Kill* v. *Sixth Avenue R. R. Co.*, 38 N. Y., 49; *Ernst* v. *Hudson R. R. R. Co.*, 35 N. Y., 11.) There was negligence in the failure to inspect after the passage of the east bound train; and this was a question for the jury. (*Hegeman* v. *The Western R. R. Co.*, 13 N. Y., 9.)

EARL, C. The General Term granted a new trial, upon the ground that the judge, at the circuit, should have submitted to the jury the question, whether the rail was broken before it was reached by the train going west carrying the plaintiff; and it held, if it was thus broken, that the defendant was liable, irrespective of any question of negligence, within the principle of the case of *Alden* v. *The N. Y. C. R. R. Co.* (26 N. Y., 102), upon the ground that it was bound to furnish a road adapted to the safe passage of trains, or in other words "a vehicle-worthy road."

I am obliged to differ with the General Term, for two reasons; 1st. If the rail was broken before it was reached by the train going west, it must have been broken by the train going east shortly before, and there is no evidence whatever that it was broken by that train. All the evidence tends to show that it was broken by the train going west. Such is the evidence of the conductors and engineers of both trains. There is no presumption that the rail was broken before this train reached it. It is unquestioned that the accident was

caused by the broken rail, and if the plaintiff claimed that the defendant was liable, because the rail was broken before the train upon which he was riding reached it, it was incumbent upon him to prove it. This he failed to do; and if the jury upon the evidence had found it, it would have been the duty of the court to set the verdict aside as against the evidence.

But there is another reason. It does not appear that plaintiff's counsel, upon the trial, claimed that he had shown any negligence against the defendant, and he did not claim to go to the jury upon any such question, and the General Term did not grant a new trial upon the ground that there was any question of negligence in the case, which ought to have been submitted to the jury, but upon the ground above stated.

In the case of *Alden* v. *The New York Central Railroad Company*, the accident, by which the plaintiff was injured, was caused by the breaking of an axle of the car in which the plaintiff was riding, and it was held that a common carrier is bound absolutely, and irrespective of negligence, to provide road-worthy vehicles, and that the defendant was liable for the plaintiff's injuries caused by a crack in the axle, although the defect could not have been discovered by any practicable mode of examination. That case was a departure from every prior decision and authority to be found in the books of this country or England, and, so far as I can learn, has never been followed anywhere out of this State. It was in conflict with the previous case, in the same court, of *Hegeman* v. *The Western Railroad Corporation* (3 Kern., 9). The only authority cited to sustain the decision was the English case of *Sharp* v. *Grey* (9 Bing., 457), and yet the decision has been distinctly repudiated in England, in the well considered case of *Readhead* v. *Midland Railway Co.*, first decided in the Queen's Bench (Law Reports, 2 Q. B., 412), and then on appeal in the Exchequer Chamber (Law Reports, 4 Q. B., 379), where it was unanimously affirmed in 1869; and the court held that the contract, made by a common carrier of passengers for hire, with a passenger, is to take due care

(including in that term the use of skill and foresight) to carry the passenger safely, and that it does not contain or imply a warranty that the carriage in which he travels shall be in all respects perfect for its purpose and road-worthy. In the Exchequer Chamber, Mr. Justice Smith, writing the opinion of the court, alludes to the case of *Alden* v. *The New York Central Railroad Company*, and dissents from it, and comments upon the case of *Sharp* v. *Grey*, relied upon in that case, and he shows clearly that it was no authority for the broad doctrine laid down in that case. He says: "We have referred somewhat fully to this case (*Sharp* v. *Grey*), because it was put forward as the strongest authority in support of the plaintiff's claim, which can be found in the English courts, and because it was relied on by the judges of the Court of Appeals, in New York, in a decision which will be afterward referred to. But the case, when examined, furnishes no sufficient authority for the unlimited warranty now contended for. The facts do not raise the point for decision." Hence the case of *Alden* v. *The New York Central Railroad Company* has no foundation of authority whatever to rest on, and the only reason given for the decision is that the new rule adopted would be plainer and easier of application than the one that had been recognized and acted upon for hundreds of years. It was always supposed that there was a difference, founded upon substantial reasons, between the liability of the common carrier of goods and the common carrier of passengers. The former was held to warrant the safe carriage of the goods, except against loss or damage from the act of God or the public enemy; but the latter was held to contract only for due and proper care in the carriage of passengers.

I have thus commented upon and alluded to the case of *Alden* v. *The New York Central Railroad Company*, with no design to repudiate it as authority, but for the purpose of claiming that it is a decision which should not be extended. I am unwilling to apply it to every case that apparently comes within its principle; nor would I limit it to the car in which the passenger was riding. The whole train must be regarded

as the vehicle; and the engine and all the cars attached together must be free from defect and roadworthy, irrespective of negligence. So far, and no farther, am I willing to regard that case as authority. Shall it be applied to steamboats and vessels, common carriers of passengers upon the ocean and our inland waters? Shall it apply to innkeepers, proprietors of theaters and other places of public resort, who invite the public into their buildings, for a compensation? And shall all such persons be held to an implied warranty that their buildings, with the appurtenances, are suitable and proper, and free from all defects which no foresight could guard against or skill detect? Shall it be applied to the roadbed of a railroad? If so applied, where shall it stop? It must also extend to the bridges, masonry, signals, and, in fact, to all the different parts of the system employed and used in the transport of passengers by railroad. And, as railroad companies are responsible for the skill and care of all their human agents, such an extension of that decision would make them substantial insurers of the safety of all their passengers, and thus practically abolish the distinction between the liability of the carriers of passengers and the carriers of goods. While such a rule would "be plain and easy of application," I am not satisfied that it would be either wise or just. Railroads are great public improvements, beneficial to the owners, and highly useful to the public. There is a certain amount of risk incident to railroad travel, which the traveler knowingly assumes; and public policy is fully satisfied, when railroad companies are held to the most rigid responsibility for the utmost care and vigilance for the safety of travelers.

If, therefore, the jury had found that the rail was broken by the eastward bound train, it would still have been a case of mere accident, caused without any want of proper care and vigilance on the part of the defendant, and the defendant would not have been liable.

I am, therefore, in favor of reversing the order of the General Term, and ordering judgment upon the nonsuit for the defendant, with costs.

LOTT, Ch. C.   Assuming that it was the duty of the defendant, within the principle of *Alden* v. *The New York Central Railroad Company* (26 N. Y. Rep., 102), as stated in the opinion of the court below, " to provide a road adapted to the safe passage of the vehicle used over it, a road of continuous, unbroken rails for each and every train to enter upon, in its passage over the road," irrespective of any question of negligence (but as to which it is unnecessary to express an opinion), I am, nevertheless, of opinion, on a careful examination of the testimony in this case, that the plaintiff was properly nonsuited.   It was shown by undisputed evidence, of witnesses competent to judge, that the rail in question was, previous to its being broken, a sound rail of the usual and a good size and of good, sound and solid iron, and that the breaks were new and perfectly bright, and no fracture or crack was discovered in the pieces that were broken off, that the end of the rail made a good joint, was perfect, not battered down, and in good order, that the chair was good, that the ties were good, sufficiently thick to support the rail, that there was a sufficient number of them, that they were sufficiently close together to give a good bearing for the rail, that the road was well ballasted with gravel around the ties.

This accident occurred early on the morning of the 5th day of January, 1864, about half a mile west of Brockport, and it was shown that the morning was very cold, that good and perfectly sound rails will break in cold weather when the track is in perfect order, and it was testified, by several witnesses, having experience as engineers on railroads, that they knew of no way of preventing it.

It also appeared by the evidence that a train from the west, called Well's train, going east, came down and stopped at Brockport a few minutes before the train, on which the plaintiff was, went up, and that the two trains met at that place.

The night watchman on that section of the road testified, that he had, on the morning of the accident, left the depot at the Brockport station and went west about three o'clock, that a train

followed him west about four o'clock, that he went three miles west and came back over the place of the accident a little before six o'clock; that he went over the track, carrying a lamp with him, to see if every thing was clear, and to see if any rails were broken or misplaced; that he walked in the middle of the track, looking at both tracks, examined the rails and found the track all right; that about an hour after he came down, the Wells' train, before referred to, came down, and there was no time to pass over the road again before the other train went up. The conductor on the Wells' train testified, that he had been engaged on railroads twenty-two years; that his engine and cars were in good order, and that if there had been a rail displaced he would have noticed it by the jolt.

The engineer on that train testified, that he did not notice any jolt; that if a rail had been broken and displaced, he would have noticed the jolt; that there was nothing on the track to prevent his seeing it, and if a rail had been displaced or a piece broken out he would have discovered it; that his train ran about twenty-five miles an hour, and that twenty-five or thirty miles an hour was safe running time.

The engineer of the train going west, and on which the plaintiff was a passenger, testified that he left Rochester about five o'clock in the morning; that the cars were in good order; that he did not discover any break in the rail; that he would detect a broken rail, if displaced in the track; that he did not discover anything wrong in passing over the point where the accident occurred with his engine, and that there was no indication of a broken rail as he passed over that point; that the first notice he had of it was by the ringing of the bell; then, on looking back, he saw that two coaches had gone off the track, and one of them was overturned; that the engine did not leave the track, and that the hind wheel of the baggage car was off; that the train was at the time running twenty or twenty-five miles an hour, not to exceed twenty-five miles.

The conductor of that train stated that he was in the rear

car of the train at the time of the accident; he testified that it was running at a rate not exceeding twenty-five miles an hour, and that it was not under full headway; that the engine did not leave the track; that there was no broken rail within three feet of the last car; that when a rail is displaced he can feel the jog.

No testimony was introduced to contradict or impeach the evidence to which I have referred, and after all the testimony was given, the case states that thereupon the counsel for the defendant moved for a nonsuit, " on the ground that there was no proof of negligence or omission of duty, but clear evidence that every precaution to insure safety to passengers had been taken by the defendant. The counsel for the plaintiff then asked to go to the jury upon the question whether the rail was broken before the train going west, upon which the plaintiff was, came upon it. The court refused permission so to do, and the counsel for the plaintiff excepted. The court then, on motion of the counsel for the defendant, nonsuited the plaintiff, and the counsel for plaintiff excepted." The request of the counsel to go to the jury on the single question " whether the rail was broken before the train going west, upon which the plaintiff was, came upon it," concedes all the ground on which the nonsuit was asked, except that. All the evidence bearing on the question negatived that fact. The testimony of the watchman and the engineers justified the conclusion, and none other, that the rail was not broken when the engine of the train in question entered upon and passed over it, and there was nothing shown which would have warranted the jury in finding that it was; and a verdict in favor of the plaintiff on that question would have properly been set aside, as against evidence and without any proof whatever to sustain it.

It follows from these views that the order granting a new trial was erroneous, and must be reversed, with costs, and the defendant is entitled to a judgment on the nonsuit ordered, with costs.

LEONARD, C. This case is distinguished from that of *Alden* v. *The New York Central Railroad Company* (26 N. Y., 102). In that case there was a defect in the axle, which caused the break. It could not have been discovered without removing the wheel. The Court of Appeals held that the difficulty of discovering the defect did not excuse it. The fact that the defect existed was enough, and in case of an injury caused thereby the company was held to be liable. It appeared that there was a test, which might have been applied in the construction, which would have developed the crack or flaw in the iron where it broke. (*Hegeman* v. *The Western Railroad*, 3 Kern., 9.)

Bending the axle, while in the process of construction, would have led to a discovery of the crack or flaw. This established negligence on the part of the company. There was no defect in the iron of the track in the case under consideration. There was no dispute on this point. The iron was good, and no crack or flaw appeared. The break was caused by the exceeding cold weather. This was the result of a *vis major*, against which no prudence could have guarded. But it is said that the break may have existed from the time the previous train going easterly passed over the track (some few minutes prior to the accident), and that if this was so, as the jury might from the evidence have found, that this case would then be brought within the principle of the case of *Alden* (26 N. Y. R.), before referred to. If the fact should be so found, it is contended that the track was for a few minutes in a broken condition, incapable of serving the purpose of its construction, from which the company would be liable in case of an injury.

This position is not sound, for the reason that the evidence is also uncontradicted, that the track had just been examined prior to the passing of the train going easterly, and found to be in good condition; and it was impossible for another examination to have been made before the train which carried the plaintiff reached the point where the accident occurred.

It has been said that the case of Alden (*supra*) holds, substantially, that the railroad company guaranty that their road and all its appointments are perfect or without defect. It may be, that liability for a defect which the company could not discover by any diligence, short of taking the machine to pieces or destroying it, amounts to a guaranty of perfection, as claimed. The principle of negligence is still the foundation of the liability.

In the present case no defect existed, or if it did exist for a few minutes, no human diligence or foresight could have discovered or prevented it. An impossibility is not demanded by the law, nor by the decision in Alden's case. The defect existed there, and it might have been discovered and prevented by attention and examination, or by the application of all the tests known to skill and science in the construction of the axle. Its omission was negligence, for which the company were held to be liable. It was no impossibility which was there demanded. Here the demand would have that extent before the liability for damages could be held to apply. The case of Alden imposes no new rule not before known to the law. It holds that the carrier of passengers is guilty of negligence, if there is any defect in the vehicle by which they are carried and an injury occurs thereby. The existence of such a defect is so held, as matter of law, if it could have been discovered or remedied by any possible care, skill or foresight. The facts before the court in that case authorized no other deduction or conclusion.

It is the same principle applied in *Sharp* v. *Grey* (9 Bing., 457), where the court held that the carriage, used for carrying passengers, must be road-worthy; that is, if there is any defect which might, by any care or foresight, have been prevented, from which a personal injury occurs, it is negligence as matter of law. Some defect has been proven to have existed in every case where a liability has been imposed for a personal injury, and the existence of the defect was attributed to a want of such care or foresight as might have prevented it. When a passenger travels by a ship, whether navigated by sails or

steam, or travels by coach or rail-car, or any other public conveyance, he expects to take, and does take, the hazard of such accidents as may occur to him without any want of care or diligence on the part of the carrier. The carrier is not liable for an injury to a passenger by the action of the elements, where no care or foresight, skill or science, could have guarded against the accident which occasioned it.

The nonsuit was properly granted, and the General Term were in error, and must be reversed.

Order of the General Term reversed, with costs, and judgment upon the nonsuit ordered, with costs. HUNT, C., dissenting.