[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 564 
The cause of the accident whereby the plaintiff's intestate lost his life was left in some doubt by the testimony, and was altogether a matter of inference for the jury to draw from the circumstances appearing in evidence relating thereto.
No direct evidence was given on the subject by either party, the defendant seeking to establish the inference that it was occasioned by the breaking of an axle by proving from the evidence of its employes and others that the axle of the engine was found broken after the accident and that its switches were properly set; that the road-bed and machinery of the train were of sound material, in good order and condition, and that *Page 567 
the train was carefully and skillfully managed; and the plaintiff, from the nature of the accident, the results produced and the circumstances surrounding it, that it was occasioned by the negligence of the defendant's servants in setting the switches at the place of accident, whereby the train was diverted from the main track and brought in collision with obstructions on a side track which produced the injury complained of. It was undisputed in the case, that the casualty occurred in the immediate vicinity of the switch; that the cars left the main track following either upon or in the general line of the side track leading from the switch; that they came in collision with cars standing on the side track at a distance of several hundred feet from the switch, and that the proximate cause of the destruction of the mail car was the collision between the train and the cars standing on the side track. These circumstances afforded a strong presumption that the train was diverted from the main track by some disarrangement of the switch. No adequate cause for the various circumstances appeared in evidence except that afforded by the presumption of a misplaced switch.
Notwithstanding the positive evidence of witnesses to the effect that at different times, during the few hours preceding this accident, they had examined these switches and found them properly set and locked, there was sufficient evidence derivable from the undisputed facts, and the conflicting statements as to the situation of the connecting rails of the side track after the accident, to afford a support for the inference, probably drawn by the jury, that the accident was caused by a misplacement of one or both of the switches. There was evidence tending to show that the mail car was thrown from the side track a distance from thirty to fifty feet down an embankment, and was found to be lying nearly abreast of the engine at right angles with it, and on fire immediately after the accident occurred. The situation, not only of this car, but that of the baggage and smoking cars attached to it, was such that it could not probably have been produced except by a collision between *Page 568 
a train moving with considerable velocity upon a clear track and a body offering great resistance.
From these facts the jury might very well have concluded that the evidence which attempted to account for the accident upon the theory that the train left the track near the upper switch in consequence of a broken axle, involving as it did the proposition that it must have run nearly four hundred feet over railroad ties and other obstructions before colliding with the cars standing on the side track, was quite improbable, and did not sufficiently account for the results disclosed by other undisputed evidence. There was evidence to support the finding of the jury upon the question of the defendant's negligence, and we see no ground upon which to interfere with the conclusions reached.
At the close of the case the defendant requested an instruction to the jury that "the burden of proof is on the plaintiff to establish the negligence of the defendant. If there is a reasonable doubt on the whole evidence as to the negligence of the defendant, the verdict should be for the defendant." We think the court committed no error in refusing to charge as requested. While it is true as a general proposition that the burden of showing negligence on the part of the defendant occasioning an injury, rests in the first instance upon the plaintiff, yet in an action of this character, when he has shown a situation which could not have been produced except by the operation of abnormal causes, the onus then rests upon the defendant to prove that the injury was caused without his fault. (Caldwell v. N.J.Steamboat Co., 47 N.Y. 291; Edgerton v. N.Y. Harlem R.R.Co., 39 id. 227; Curtis v. R. Syracuse R.R. Co.,
18 id. 534.) It was said by Judge GROVER in the Edgerton Case,
"whenever a car or train leaves the track it proves that either the track or machinery, or some portion thereof, is not in a proper condition, or that the machinery is not properly operated, and presumptively proves that the defendant, whose duty it is to keep the track and machinery in the proper condition and to operate it with the necessary prudence and care, has in some respect violated his *Page 569 
duty." "The court charged that the defendant was bound to show and give some explanation of the cause of the accident. This portion of the charge must be understood in reference to the facts of this case and as applied to such facts. In this view it was not erroneous." (See, also, The J. Russell Mfg. Co. v. NewHaven Steamboat Co., 50 N.Y. 121; Mullen v. St. John,
57 id. 572; Ginna v. Second Avenue R.R. Co., 67 id. 597.) When this request was made the evidence had clearly raised a presumption of negligence against the defendant, and the only question relating thereto which remained for the jury to consider was whether this presumption had been sufficiently negatived by the evidence introduced by the defendant. Under the authorities cited it would not have been error even if the court had charged that the plaintiff had established a prima facie case, and the burden of explaining the cause of the accident then rested upon the defendant.
The request must be considered with reference to all the facts appearing in the case at the time it was made, and as applied to them we do not think the defendant was entitled to the charge requested.
This request was also properly denied for the reason that it was coupled with the proposition that the jury should find for the defendant if they entertained a reasonable doubt upon the whole evidence as to the negligence of the defendant.
We are not aware of any rule applicable to the trial of issues of fact in civil actions which requires a party upon whom the burden of proof rests to establish a case free from reasonable doubt. In criminal cases the law, out of tender regard for the rights of accused persons, and the presumption of innocence which always attaches to persons in that situation, gives to the defendant the benefit of any reasonable doubt existing as to his guilt; but in civil actions, unless the issue involves the commission of a crime by some of the parties thereto, the application of such a rule is, we think, unauthorized by the law of evidence. It was held, in the case of Johnson v.Agricultural Insurance Company (25 Hun, 251), where the defendant had, in answer to an action upon a policy of insurance *Page 570 
to recover damages for a loss occasioned by fire, alleged that the plaintiff had himself fired the insured buildings; that it was sufficient if the defense was supported by a preponderance of evidence, and that it was error to require the defense to be proved beyond a reasonable doubt. The question decided in that case has been the subject of considerable controversy among authors upon evidence, and we do not intend to express any opinion thereon; but we apprehend that the case suggested presents the only exception, if any exists to the rule, that upon the trial of a civil action the party sustaining the burden of proof performs his obligation by presenting a preponderance of evidence. The rule is concisely stated in 3 Greenleaf's Evidence, section 29, as follows: "A distinction is to be noted between civil and criminal cases in respect to the degree or quantity of evidence necessary to justify the jury in finding their verdict for the government. In civil cases their duty is to weigh the evidence carefully and to find for the party in whose favor the evidence preponderates, although it be not free from reasonable doubt. But in criminal cases the party accused is entitled to the benefit of the legal presumption in favor of innocence which, in doubtful cases, is always sufficient to turn the scale in his favor."
The exceptions taken to the ruling of the court in holding that the defendant owed the same degree of care to the clerks and mail agents riding in the postal car, in charge of the mails, as they did to passengers riding upon the train, were not well founded. That question was decided in the case of Nolton v. WesternRailway Company (15 N.Y. 444) and Blair v. Erie Railway Co. (66 id. 313), and we see no reason for questioning the correctness of the disposition then made of the question. The opinion in the case of Pennsylvania Railroad Company v. Price
(96 Penn. St. 256) not only does not conflict with the doctrine of these cases but cites with approval the Nolton Case. The question in that case was upon the construction to be given to the word "passenger," as used in the act of 4th April, 1868 (Pamph. L., page 58) of the Laws of Pennsylvania, and it was held, from the language employed in the act, that the legislature intended to *Page 571 
exclude postal agents from the class therein designated as passengers, and that they were thereby placed on the same footing as the employes of the company in respect to their rights of action against the company for injury occasioned by negligence.
The question arising over the indorsement on the back of the pass issued by the defendant for the use of the mail agent, whereby it stipulated for an exemption from liability for damages on account of injuries occurring through its negligence, is the only one remaining which requires notice. The defendant's requests to charge upon this subject were based upon the assumption that this indorsement alone, accompanied by proof of its delivery, evidenced a contract binding upon the person using the pass. There was no request made to have this question submitted to the jury, neither was there a finding as to the terms of the contract under which the deceased was carried at the time of his death. No attempt was made by the defendant to prove an express contract between itself and the government for carrying the mails, except that sought to be inferred from the indorsement on the pass, and this, if any proof of a contract, referred only to one of the incidents of the general arrangement under which their service was performed for the government.
The evidence showed that the defendant had been engaged for a long time in transporting the mails, but whether this service was performed under an express or an implied contract between the parties did not appear. In either event we are authorized to assume that the contract under which such service was performed did not contain any provision which the government agents were unauthorized by the statute to make. The provisions relating thereto are embraced in sections 3997 to 4005, both inclusive, of chapter 10 of title 46 of the Revised Statutes of the United States. Section 4000 of this chapter reads as follows: "Every railway company carrying the mail shall carry on any train which may run over its road, and without extra charge therefor, all mailable matter directed to be carried thereon, with the person in charge of the same." *Page 572 
The compensation for the services rendered by a railroad company in such transportation is provided for by other sections of the statute, and is graduated by the quantity of the matter carried and the distance over which it is transported, and this compensation is thereby placed beyond the authority of any agent of the government to vary or diminish. The authority of its agent to contract on its behalf for the transportation of the mails is limited by the provisions of the statute, and no power is thereby given to stipulate for any advantage to it, as a consideration for exemption to a railroad corporation of liability from causes of action accruing through its negligence. Indeed, it would be a strange proposition to say that one government agent, can barter away the individual rights of another, as a consideration for some benefit to be derived by his principal therefrom. Certainly such a power cannot be supposed to exist except by force of an express statute or voluntary consent of the parties to be affected thereby. It seems to follow that even if there had been an express contract between the government and the defendant, providing for the exemption in question, it must have been void, in respect to such a provision, for want of authority in the officer representing the government to make it. Such officer, acting under the power contained in the statute, could not lawfully represent the government in making such a contract, and he could represent the person subjected to the risks of such negligence, only by virtue of express authority conferred upon him by such person.
It appeared, on the trial, that it was the custom of one of the superintendents of the government mail service to issue a monthly requisition upon the defendant for passes over its road for the use of the persons traveling in charge of the mails, and that this was done for the month of January, 1881, and the pass in question was accordingly issued by the defendant and delivered to such superintendent for the use of the plaintiff's intestate during that month. This pass was sent by the superintendent to the deceased, but whether it reached him or not, does not appear. Upon the back of the pass was printed the following condition: "The person accepting this free pass *Page 573 
assumes, in consideration therefor, all risk of accident, and expressly agrees that the New York, Lake Erie and Western Railroad Company shall not be liable, under any circumstances, whether of negligence by their agents or otherwise, for any injury to the person or for any loss or injury to the property of the passenger using this pass." Assuming, for the purpose of the argument, that the mail agent received the pass, and was chargeable with knowledge of its contents, the question is presented as to the effect, if any, which it had upon his rights.
It cannot now be disputed that an individual transported over the route of a carrier of passengers may debar himself, by a contract founded upon a sufficient consideration, from any claim to damages for injuries to his person or property occasioned by the negligence of such corporation during the course of transportation. Such a contract, however, to be binding upon a party must be made by him, or by some one authorized to act in his behalf. Such authority may sometimes be implied from certain contract relations existing between the parties, as between master and servant, or principal and agent; but no such implication can arise, when the relations of the parties are regulated and defined by statute. (Stinson v. N.Y.C.R.R. Co.,32 N.Y. 333; Blair v. Erie Railway Co., supra.)
We think, under the circumstances presented by the case, that this pass was a mere voucher, issued for the convenience of the agent and the information of the employes of the defendant, and did not in any sense constitute a contract between the defendant and the person using it. It was not delivered in accordance with any negotiation had, or contract, made at the time of its issue, but was obviously employed from time to time, as the necessity for it arose, to carry out some pre-existing arrangement made between the defendant and the government in relation to the transportation of the mails and the persons having them in charge.
The principle involved in the cases holding that a party, making a contract with a common carrier, who voluntarily accepts a ticket or receipt purporting to contain the conditions *Page 574 
of the contract for the transportation of persons or property is thereby deemed to have assented to such conditions, has no application to this case. These cases proceed upon the assumption that the rights of the parties are founded upon an express contract assented to by the respective contracting parties, and the presumed intent and understanding of the parties that such contract was made and perfected, at the time of the payment of the consideration, and the delivery of a voucher therefor, stating the conditions upon which it was received. In this case, however, the rights which could be made the subject of contract stipulations between the several parties were limited by the statute, and certainly one of those parties had no reason to suppose that he was monthly making a contract which affected in any degree his right of transportation over the defendant's road, which had already been secured to him by law. The absolute duty of providing a car for the transportation of the mail, and of carrying such mail and the persons in charge thereof, is imposed by the statute, and an imperative obligation for its performance rests upon the corporation accepting the public mails for the purpose of transportation. An attempt by such a corporation to impose any other conditions upon the performance of this service than those provided by the statute, would be illegal and ineffectual, to shield it from the consequences of its wrongful acts.
It is not claimed that the superintendent of the railroad mail service, to whom this pass was delivered, had authority to enter into any contract on behalf of the government. Neither is it claimed that any contract has been made by the defendant with any other officer of the government, exempting it from liability, for injuries, sustained by mail agents on account of its negligence.
This defense must, therefore, rest upon the proposition that a person to whom is secured an absolute statutory right, to transportation over a railroad, forfeits his right to damages for an injury inflicted upon him though the negligence of such railroad corporation, by the involuntary acceptance of a voucher containing provisions, intended by the corporation, to exempt it from liability for its negligence, although the person receiving *Page 575 
it, supposed it was intended solely to facilitate the enjoyment of his right of transportation.
We are of the opinion that the agent's acceptance of the pass under the circumstances of this case did not indicate an intention to assent to the provisions therein contained, and even if it might be so construed, that the want of a consideration for such an agreement rendered it nudum pactum. A promise by one party to do that which he is already under a legal obligation to perform has frequently been held to be insufficient as a consideration to support a contract. (Vanderbilt v. Schreyer,91 N.Y. 392.)
We are, therefore, of the opinion that the judgment should be affirmed.
All concur.
Judgment affirmed.