WILLIAM NEWELL, Appellant, v. CORNELIUS J. RYAN AND JOHN B. McDONALD, Respondents.

*Negligence — liability of a master, to one of his servants, for appointing an incompetent person to act for him.*

The plaintiff, an engineer in the employment of the defendants, while engaged in drawing a train of cars from a dump to the gravel pit, at night, came into collision with another train running from the pit to the dump and sustained injuries, to recover damages for which this action was brought. The evidence tended to show that the plaintiff looked down the track just before the collision occurred, and discovering nothing commenced to oil the valves of his engine, which had to be done while the engine was in motion; that the other train usually remained in the pit until the train returning from the dump had reached the pit or passed the switch, and that the head-lights in the engines were usually kept lighted at night.

On the night in question the other train left the pit, before the plaintiff's train had reached the switch, without having the head-light lighted. It was in charge of one Kinney, who was acting as engineer for the first time on that night, he having been previously employed as a fireman for five or six months, and having had little or no experience as engineer.

*Held,* that it was error to nonsuit the plaintiff upon the ground of his contributory negligence; that both that question and that of the negligence of the defendants, in placing one of their engines in the charge of an incompetent person, should have been submitted to the jury.

Appeal from a judgment, entered in Onondaga county upon a nonsuit directed at the Onondaga Circuit.

The plaintiff was injured by the collision of two trains while operating as an engineer upon a locomotive engine in the service of the defendants, on the 16th of October, 1883. The defendants were copartners, being engaged in the construction of a section of the New York, West Shore and Buffalo Railway, west of Syracuse.

The plaintiff alleges that the defendants "did not provide, or cause to be provided, good, safe, competent, skilled and experienced engineers to run, manage and handle the other locomotives and trains, running and working in connection with the plaintiff on said construction works; but ran, managed and handled one of the locomotives and trains of said dumpers, running and working in connection with this plaintiff and his train, and caused the same to be run, managed and handled by an unsafe, unskilled and inexperienced man."

The defendants allege that the plaintiff was injured through his own carelessness and want of skill, " or through the carelessness and want of skill of his co-servants and co-employees."

The trial judge put the nonsuit upon the ground "that the evidence demonstrates that the negligence of the plaintiff contributed to the injury."

*M. E. Driscoll,* for the appellant.

*M. A. Knapp,* for the respondents.

HARDIN, P. J.:

By the evidence it appears the defendants were engaged in removing, from gravel pits to the line of the railroad, gravel, by means of three engines and three trains of what are known as "dump cars."

The plaintiff was engineer and operator of the "Della," and she had been out to the long dump and unloaded, and was running back, and had run within thirty or forty rods of the switch, when the Henrietta, with another train of dump cars, started out from the pit and came in collision with the plaintiff's engine, causing the injuries.

There was evidence tending to show that it was the practice during that night, as this service was being performed in the night, for the trains in the pit to remain until the return of the train that had gone out to dump. If the train moved by the Henrietta had remained in the pit until the Della had returned to the pit, or to the switch adjacent to the pit, the collision would not have occurred.

Plaintiff's evidence tends to show that there had been such a practice during the operation of the trains that night; that he had reasonable grounds for relying upon the Henrietta remaining in the pit until he had returned. Just before the injuries were received the plaintiff looked down the track, and discovering nothing approaching commenced oiling the valves of his engine, which process had to be performed while the engine was in motion. While thus engaged in oiling the valves the collision occurred. The Henrietta was moving out of the pit without any head-light. The evidence tends to show that it was the duty of the engineer of the Henrietta to supply a head-light. None was supplied that night

by the persons operating the Henrietta. On the occasion of the accident John Kinney was acting as engineer of the Henrietta. That was the first night he had had charge of the engine. Prior to that he had been a fireman five or six months, with little or no experience as engineer, except such as he derived from making a few short trips in the daytime. He had been engaged some little time in "firing" in the daytime. He was operating the engine that night with a head-light on the engine, but it was not lighted, and the evidence tends to show that it was his duty to have had the head-light lighted; and there is some evidence tending to show that had there been a head-light the persons on the train operated by the plaintiff would have seen it and the injury would have been avoided; and there is some evidence tending to show that it was the duty of the engineers to determine for themselves when to go out, and not to do so until the track was known by them to be clear. We think there was sufficient evidence to require the question of fact to be submitted to the jury, whether or no the defendants were guilty of negligence in the premises.

In *Mann* v. *The Delaware and Hudson Canal Company* (91 N. Y., 500) Judge ANDREWS says, viz.: "The duty to use due care in the selection of competent servants is one of the master's duties. The duty of selection, in case of corporations, must be delegated. But any negligent act or omission in its performance is the act or omission of the master. In *Laning* v. *The New York Central Railroad Company* (49 N. Y., 521; 10 Am. R., 417) the actionable negligence upon the case as presented was found in the employment of Westman, who had, after his original employment by the defendant, become incompetent by intemperate habits, and who selected the incompetent man to build the scaffold. But *Flike* v. *The Boston and Albany Railroad Company* (53 N. Y., 549; 13 Am. R., 545), and *Booth* v. *The Boston and Albany Railroad Company* (73 N. Y., 38; 29 Am. R., 97), show that if Westman had been a fit man to be intrusted with the duty, his negligent employment of incompetent men would have rendered the defendant liable. In the Flike case Rockfeller was a competent man, but his omission to see that the proper number of brakemen were sent with the train, was held to be an omission of the master for which the principal was responsible. In the Booth case, arising out of the same accident as the Flike case, the

point was made that as it then appeared that, by the rules of the company, it was the conductor's duty to report to Rockfeller any deficiency of brakemen, and that the conductor omitted to perform this duty, the omission was that of a co-servant merely; but this court overruled the point on the ground that no matter whose immediate negligence it was to start the train without sufficient brakemen, it was in law the negligence of the defendant. In *Fuller* v. *Jewett* (80 N. Y., 46; 36 Am. R., 575) the same. rule was applied in respect to the duty of the master to provide suitable machinery and keep it in repair. The work of repairing the engine in that case was committed to competent mechanics with proper instructions, but they failed to perform the duty properly, and the master was held responsible for the omission. In this case it does not appear that Benedict knew that Townsend was an unfit person to be sent to flag the train. The company had apparently, without any inquiry as to his qualifications, put him in the position of an extra man, who might be selected by a conductor to fill a vacancy, thereby giving an assurance of his competency for the position. Even if Benedict was negligent in selecting Townsend, he was in so doing acting in the place of the master, and his negligence was the defendant's negligence. The power to select a temporary brakeman from the extra men was conferred upon Benedict. The brakemen were subject to his orders. It would be unreasonable that the master should confer upon a subordinate the power to select a man for so important a duty as that intrusted to Townsend, and be exonerated from responsibility on the ground that the subordinate was negligent in its performance. The primary wrong was the placing of Townsend among the extra men without inquiry as to his fitness, or instructing him as to the rules of the company. The negligence of Benedict, if it existed, was secondary and co-operative merely. These views cover the questions presented."

In *Payne* v. *The Troy and Boston Railroad* (83 N. Y., 574), the court says: "The testimony here as to the defendant's negligence is not very strong, and the case is a very close one on the question of such negligence; yet it was not so destitute of facts and circumstances for the consideration of the jury, and so clear against the plaintiff, as to leave no room for doubt, and to justify the court in holding that there was no evidence of negligence. It is a well

settled rule, that it is a matter of right in the plaintiff to have the issue of negligence submitted to the jury, when it depends upon conflicting evidence or on inferences to be drawn from circumstances in regard to which there is room for a difference of opinion among intelligent men."

*Second.* Whether the plaintiff was guilty of contributory negligence or not was a question of fact. There was some evidence tending to show that the practice adopted for the movement of the trains that night justified the plaintiff in assuming that the track would remain clear for the return train, and that the Henrietta train would remain in the pit until the return train had vacated the track. Before the plaintiff commenced oiling his valves he looked down the track and discovered nothing in the way of the progress of his train. It was for the jury to say whether or no, under all the circumstances, he was acting like a prudent and cautious man in oiling the valves at the time and place and under the circumstances attending the operation of the trains. It is to be borne in mind that this service was being performed in the night time with the knowledge of the defendants, and that the Henrietta had theretofore not only had a head-light on its train but that light had been lighted, and it was for the jury to consider whether the antecedent practice in respect to maintaining a head-light lighted should not be kept up. It was for the jury to say what inferences should be drawn from all the evidence and circumstances disclosed with regard to the plaintiff. (*Seybolt* v. *The N. Y., L. E. and W. R. R. Co.*, 95 N. Y., 562; *Hart* v. *The Hudson River Bridge Co.*, 80 id., 622.)

During the trial Poyle, a locomotive engineer, was called as a witness in behalf of the plaintiff, and he stated that the ordinary time required for a man to act as fireman before he is competent to take charge of an engine varies. When he was asked how long that experience should continue before he was competent, there was an objection made and the evidence was excluded. The witness continued that he knew Kinney while he was on the works, and that so far as the witness knew the business of Kinney was that of fireman. Witness was then asked whether he could say that Kinney was competent to run an engine on those works. That was objected to and the evidence was excluded. Witness continued,

viz.: "It has always been customary for engineers to attend to their head-lights; they were responsible for them, and if not in order to report them."

It would seem from this evidence that there was a neglect on the part of the engineer Kinney, in charge of the Henrietta, to have a light on his train before moving the same. Whether that neglect arose from the circumstance that he was inexperienced and unfit to be an engineer, was a question to be considered in connection with the other evidence by the jury. The absence of the light on the Henrietta was a circumstance legitimately bearing upon the question of whether or no the plaintiff was guilty of contributory negligence at and preceding the time of the injuries received by him.

We come to the conclusion upon all the facts and circumstances disclosed by the evidence, that a question of fact was raised for the jury to determine whether or not the plaintiff was guilty of contributory negligence, and that it was error in the trial judge to hold, as a matter of law, that the plaintiff could not recover by reason of his supposed contributory negligence.

If these views are correct they will lead to a new trial.

Judgment and order reversed, and new trial ordered, with costs to abide the event.

BOARDMAN and FOLLETT, JJ., concurred.

Judgment and order reversed, and a new trial ordered, with costs to abide the event.