Smith, P. J.
The plaintiff’s intestate was killed while in the employ of the defendants, at work in their tile manufactory. The accident was caused by the. breaking of one of two iron bolts which held up a friction pulley used to give motion to a clay mill. When the pulley was raised the mill was at rest; but when the pulley was allowed to drop, it set the mill in motion. The deceased got’ into the mill for some purpose connected with his duty, and while he was there, the bolt broke, the pulley fell, the mill was started and he was killed. The evidence was that the bolt in question was tightly fastened to the pulley, at one end, and to the lever, which raised it, at the other end; that as the lever was raised and lowered, the bolts, having no lateral play, -were bent slightly backward and forward, and that such bending tended to cause the iron of the bolts to granulate and thereby to weaken and finally to break. The testimony of the experts was to the effect that in that respect the mode of construction was defective. The bending of the bolts, of course, it was not difficult to see. ■ To this statement of the case, as made by the testimony on the part of the plaintiff, which is taken substantially from the opinion delivered by the trial judge on denying a new trial, may be added the statement that there was testimony tending to show that the bolt broke a short distance below the lever; that at the point of fracture, the material of the bolt was partially granulated or crystallized; and that the ■defect complained of ■ could have been obviated by either putting a hinge or eyebolt in the bolts in question, or by slotting the arms of the iron plate, called a “Y,” attached *680 to the lever, into which the bolts were inserted, the latter of which the defendants caused to be done after the accident.
Upon the testimony, nothing else appearing in the case, the jury would have been warranted in finding that the injury was the result of the defective construction above pointed out, and thus the onus was cast upon the defendants of showing that the injury was caused without their fault. Seybolt v. The New York, Lake Erie and Western R. R. Co., 95 N. Y., 562. True, there is no proof that the defendant knew that the iron of the bolt was granulated or weakened, nor is it proved that it was possible for them to' have known it before the accident; but the evidence tended to show that it was obvious that by reason of the defective construction above pointed out, the iron rods were subjected to a bending process, which tended to granulate and weaken them, and the question was, therefore, presented by the evidence whether the defendants in the exercise of reasonable care—that is, a degree of care commensurate with the danger to which the deceased was subjected to his employment—ought not to have ascertained such defect and provided against it.
That view of the case seems to have been taken at the trial, in the first instance, for at the close of the plaintiff’s testimony, the defendant’s counsel, without asking for a non-suit, proceeded to give evidence with a view of showing that his clients used due care. However cogent his testimony in that regard, the question remained whether it was sufficient to overcome the prima facie case upon which the plaintiff rested.
The motion for a new trial seems to have been disposed of at the circuit upon the idea that the case shows merely that the machinery, made as it was, wore out sooner than it would have done if it had been made in some other way. But that suggestion overlooks the testimony tending to show that the speedy wearing out was in consequence of a faulty construction which was patent, and which weakened the natural and ordinary capacity of the machinery to endure.
We think the order should be reversed and a new trial ordered, costs to abide event.
Haight and Bradley, JJ., concur; Barker, J., not -sitting.