FRANK A. PALMER, RESPONDENT, *v.* THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, APPELLANT.

*A carrier of passengers is bound to use the highest degree of care — the question as to whether, and how often, it should make an inspection of a car should be left to the jury.*

Upon the trial of this action, brought by the plaintiff to recover damages for injuries sustained by him while riding as a passenger in one of the defendant's passenger cars, it was conceded that the cause of the accident was the breaking of a defective spindle in the draw-bar of the forward car, and that this spindle was so surrounded and covered up that an inspection to ascertain any defects in it, at the point where it broke, could only be made by taking the car to the shop and taking apart the machinery constituting the draw-bar and surrounding the spindle, and, also, that this inspection had not been made by the defendant within the two years prior to the accident.

Upon the trial the court charged the jury that the defendant, being a carrier of passengers, was bound to use the highest degree of care that was practicable and reasonable under the circumstances, and left it to the jury to say whether it was the duty of the defendant to make such an inspection, exposing the spindle and testing it with a hammer, or otherwise, to ascertain whether it was sound, and how often such inspections should be made

*Held,* that it did not err in so charging.

APPEAL from a judgment entered on the verdict of a jury at the Saratoga circuit, October, 1866, and from an order denying a motion for a new trial made on the minutes of the justice presiding at the trial. The action was brought to recover damages for injuries alleged to have been sustained by the plaintiff by the negligence of defendant.

The injuries were to plaintiff's eye, and were received while he was a passenger on the defendant's train, and riding in a passenger car.

The train was running rapidly, when the engine became separated from the balance of the train, the air brakes were applied automat-

ically, the train slowed down at once, and the engine, leaving the train, drew the bell cord with it. The end of the bell cord having a metallic fastening thereon, was drawn rapidly through the car where plaintiff was riding, and struck plaintiff's eye, causing the injuries complained of. It was agreed upon the trial that the sole cause of the accident was the breaking of the draw bar of the forward car and the bell rope pulling through in consequence. The negligence alleged, consisted in defects in the draw bar, and failure to properly inspect and ascertain and repair the defects before the accident.

The court, in submitting the case to the jury, left it to the jury to determine, *first,* whether, as alleged in the complaint, the draw bar was old, worn out, defective or broken, and so unfitted for use; *second,* whether the defendant had neglected to properly inspect the draw bar, and ascertain that it was so defective and unfit for use, and to repair the same; and in determining the last question the jury were left to say what the duty of the defendant was, as to inspection of this draw bar. The court charged the jury, that *the defendant, being a carrier of passengers, was bound to use the highest degree of care that was practicable and reasonable under the circumstances,* and left it to the jury to say, under this rule, what inspection of the draw bar should have been made by the defendant under the circumstances developed in this case, and whether such inspection was in fact made. It appeared that the part of the draw bar known as the spindle, broke, and this spindle was so surrounded and covered up that an inspection to ascertain any defects in it, at the point where it broke, could only be made by taking the car to the shop, and taking apart the machinery constituting the draw bar and surrounding the spindle; and the court left it to the jury to say whether it was the duty of the defendant to make such an inspection, exposing the spindle to sight, and testing it with a hammer or otherwise to ascertain whether it was sound, and how often the defendant should make such an inspection. The defendant excepted to this part of the charge, but there were no other exceptions relating to the question of the defendant's negligence, and no requests to charge by defendant. There were motions for nonsuits and for new trial on the minutes, and to set aside the verdict as excessive.

*Edwin Young*, for the appellant.

*Amasa J. Parker, Jr.*, for the respondent.

WILLIAMS, J.:

While it is true as a general proposition that the burden of showing negligence on the part of the defendant, occasioning an injury, rests in the first instance upon the plaintiff, yet in an action by a passenger for injuries received in an accident to a railroad train, when it is made to appear the accident resulted from defects in defendant's road bed, machinery or appliances used in operating the road, the presumption of negligence arises, and the onus then rests upon the defendant to show that the injuries were caused without its fault. (*Seybolt* v. *N. Y., L. E. and W. R. R. Co.*, 95 N. Y., 562, and cases there cited.) It was conceded at the outset of the trial that the cause of the accident was the breaking of the spindle of the draw bar of the forward car. There seems to have been no dispute but that this spindle was defective in some way, had a flaw in it, perhaps, which caused it to break. It would not have broken if it had been free from defects. The only real question as to defendant's negligence, therefore, was whether it was at fault in not discovering such defect and repairing it before the accident. Upon this question, in view of the principle of law already referred to, the defendant had the onus, the burden of proof on the trial, of showing that it was free from such fault, and the point made by the defendant upon this appeal, therefore, is that upon the evidence in the case there was no question for the jury as to defendant's negligence in discovering or repairing the defects in the spindle. The submission of the case to the jury by the trial court, was very clear and definite as to grounds upon which they were to charge defendant with this negligence if at all. The verdict must stand or fall upon these grounds. We are not permitted to seek for other grounds, but must consider those submitted by the court and those alone. The jury have found upon no others, and if a verdict is to rest upon other grounds, the jury must first consider and pass upon them before the court on appeal can give effect to them.

The theory upon which the case was submitted to the jury was this. It was impossible for defendant to discover the defects in the spindle, except by taking the car into the shop and taking apart

the machinery constituting the draw bar; and so exposing the spindle to view, and to test by hammer or otherwise to ascertain whether it was sound. This inspection the defendant had not made of this spindle within the two years or thereabouts, next prior to the accident. The court left it to the jury to say whether the defendant ought not to have made such inspection within the two years, and how often, and whether such inspection so made would have discovered the defect, and have avoided the accident, and we are here to determine whether this was a proper submission of the case to the jury, or whether upon the whole evidence the defendant showed itself free from fault, so as to leave no question for the jury. The position of the defendant is that upon the evidence the court should have decided, as matter of law, that no duty was imposed upon defendant to make such an inspection as that submitted to the jury for its consideration.

While a railroad carrier is not an insurer of the safety of its passengers, still it is held to a very high degree of care in the conduct of its business. In *Hegeman* v. *Western R. R. Co.* (13 N.Y., 9) it was said, *a railroad company was responsible for the utmost precaution, care and skill in the construction and operation of cars and engines used in carrying passengers, to render them sufficient and safe, and was bound to use all precautions, as far as human care and foresight would go for the safety of passengers.* And it was held where the accident occurred by reason of the breaking of one of the axles of a car, in consequence of a latent defect, *which could not be discovered by the most vigilant external examination,* the company was liable, although it purchased the car from extensive and skillful car-makers, and the axle was procured from a manufacturer of skill and reputation, *if the defect could have been discovered in the process of manufacturing the axle or car by the application of any test known to men skilled in such business;* and it was held to be a question for the jury whether the latent defect could have been discovered by the application of such a test. In *Curtis* v. *R. and S. R. R. Co.* (18 N. Y., 534), it was said a railroad company was bound to provide a safe and secure carriage for the transportation of passengers: And nothing could exempt it from liability, but the existence of some *latent defect, which no reasonable degree of human skill and foresight could guard against.* That the com-

pany was bound to see that the road and all its appurtenances were in perfect order, and *free from any defect which the utmost vigilance aided by the highest degree of knowlege and skill could discover or prevent*. In *Deyo* v. *N. Y. C. R. R. Co.* (34 N. Y., 9), the correctness of the rule laid down in the Curtis Case, was recognized and it was said the *utmost foresight as to possible dangers, and the utmost prudence in guarding against them*, are required to exempt a railroad company from liability in case of injury to a passenger, and the familiar form of expressing the rule of the duty of the carrier was "*as far as human care and foresight will go.*" In *McPadden* v. *N. Y. C. R. R. Co.* (44 N. Y., 478), the principle laid down in the Hegeman Case was recognized as correct, and it was said railroads were held *to the most rigid responsibility, for the utmost care and vigilance for the safety of passengers*. In *Carroll* v. *Staten Island R. R. Co.* (58 N. Y., 127), in which the accident resulted from the explosion of the boiler of a steam ferry boat, run by a railroad company, the McPadden Case was cited with approval, and it was said carriers of passengers *are held to the exercise of the utmost skill and care, in the construction and management of the vehicles they use, and the machinery they employ*. It was said as to the crack in the boiler, that if *it was undiscoverable upon examination, or by application of any tests known or practiced, and if no presumption that the boiler was defective was created by the fact that it had been in use for several years*, then the fact that the defect existed would not have justified a recovery. In *Pennsylvania Co. v. Roy* (102 U. S., 451), it was said a railroad company, *as to passengers*, was *required to observe the utmost caution characteristic of very careful, prudent men*, and was responsible for injuries *which might have been avoided or guarded against by the exercise of extraordinary vigilance, aided by the highest skill ; for the slightest negligence or fault, from which injury results to the passenger, the company was liable in damages ;* and that these doctrines, to which the courts, with few exceptions, have given a firm and steady support, it was neither wise nor just to disturb or question.

These cases sufficiently indicate and illustrate the views of the Court of Appeals of this State and of the Supreme Court of the United States, with reference to the duty of railroad com-

panies towards the passengers they carry upon their trains. In view of these decisions, it seems to us the trial judge stated the law quite as favorable to the defendant as he should have done, when he said *the defendant was bound to the highest degree of care that was practicable and reasonable under the circumstances.* We are unable to find any authority for the proposition contended for by the appellant here, that *a railroad company is bound only to the exercise of the highest degree of care consonant with the ordinary, efficient and economical operation of its road.* None of the cases cited by appellant's counsel seem to us to warrant the proposition. We think the rule laid down by the Court of Appeals and the United States Supreme Court much the wiser and safer rule, and applying it here, there seems to be no doubt but that the case was properly submitted to the jury by the trial court. It cannot be contended that the defect in the spindle of the draw-bar could not have been discovered by the tests suggested in the charge, by taking the draw bar apart and exposing the spindle to view, and to tests with the hammer and otherwise that might have been applied. It was properly left to the jury to say whether such tests would have discovered the defect, and whether it was not the duty of the defendant to have made this inspection within the two years prior to the accident, which it concededly did not do. We think it was a question for the jury, upon all the evidence, whether, if such inspection had been made, at reasonable intervals, they would not have discovered the defects in the spindle, and have avoided the accident. The instructions to the jury, as to considering and passing upon the reasonable necessity of inspecting this part of the machinery of the car and draw-bar, as compared with the inspection of the wheels, axles and other parts of the cars, were quite as favorable to the defendant as it was entitled to. We think there was no error in the charge or the manner or theory upon which the case was submitted to the jury. We cannot say, upon the evidence, there was no question for the jury as to whether the accident was not the result of fault on the part of defendant in not discovering the defects in the spindle, and repairing the same. The motions for nonsuit were properly denied, and the motion for a new trial on the minutes was also properly denied. The damages were for the jury, whose duty it was to assess and fix the amount thereof. We cannot say, under

the circumstances, upon all the evidence, the damages were excessive, so as to have called upon the trial court to set aside the verdict, or to call upon this court to reverse the judgment by reason of the failure of the trial court to set aside the verdict and order a new trial.

The judgment should be affirmed, with costs.

LEARNED, P. J., and LANDON, J., concurred.

Judgment and order affirmed, with costs.