Burke, J. (dissenting).
We dissent.
If this were a case in which a manufacturer made express representations concerning the quality of its product calculated *438 to promote its sale or use by persons in the plaintiff’s position, our decision in Randy Knitwear v. American Cyanamid Co. (11 N Y 2d 5) would allow a recovery. If it were a case where a defendant sold a food or other household product to a member of a family, the warranty incident thereto would extend to all for whose consumption or use the product was obviously purchased. (Greenberg v. Lorenz, 9 N Y 2d 195; Greenman v. Yuba Power Prods., 59 Cal. 2d 67.) The conclusion reached by the majority might be correct even if the defective product were sold to an employer for the use of his employees. (Thomas v. Leary, 15 A D 2d 438; Peterson v. Lamb Rubber Co., 54 Cal. 2d 339.) This, however, is none of those cases. The conditions present in those cases are entirely different. There the manufacturer knew that the article he made was not to be inspected thereafter. Here Federal regulations provide for rigorous inspection and certification from the Federal Aviation Agency. There the risk of loss was a trap for the unwary. Here all are aware of the hazards attending air travel and accident and special insurance is readily available at moderate rates. Plaintiff* is a purchaser of a service from an airline seeking to assert a warranty cause of action against Lockheed, the assembler of an airplane, and Kollsman, the manufacturer of an allegedly defective component part thereof. In such a situation we see no satisfactory basis on which to uphold against Lockheed a cause of action not grounded in negligence, while disallowing it against the manufacturer of an alleged defective part.
First, we do not find a cause of action stated under the implied warranty provisions of section 96 of the Personal Property Law. Plaintiff purchased no goods; she entered into a contract of carriage with American Airlines. By a long line of cases in this court, the most recent being Kilberg v. Northeast Airlines (9 N Y 2d 34), it is settled that the measure of American Airlines’ duty towards plaintiff was an undertaking of reasonably .safe carriage. This duty is, of course, discharged by the use of due care. Crucial is the fact that this duty would be unaffected if American assembled its own planes, even if they contained a latent defect. Why, then, should plaintiff’s rights *439 be any greater simply because American chose to contract this work out instead of doing it itself? Absent some equity of direct reliance on the advertised representations of one of the manufacturers, which might invoke the reasoning of Randy Knitwear v. American Cyanamid Co. (11 N Y 2d 5, supra), it is no concern of plaintiff how the person with whom she dealt, American, subdivided its responsibility of furnishing the machines and services in discharge of its undertaking of safe carriage.
Of course, plaintiff’s right to due care cannot be diminished by American’s delegating certain tasks to others. What would be actionable negligence if done by American is not less so because done by another; such a person may be sued by plaintiff, and so may American if the negligence was discoverable by it. By the same token, however, plaintiff’s primary right to care from American (and, indeed, all whose actions foreseeably affect her) should not be enlarged to insurance protection simply because American chose to have a certain task performed by another. We note that the argument made in some cases based on the avoidance of a multiplicity of actions is inapplicable here. In such cases, the plaintiff himself is the recipient of a warranty incident to the sale of goods and if the defect is in the manufacture it is at least reasonable to suggest a procedure by which liability may be imposed by the person entitled to the recovery directly against the one who, through a chain of warranties, is ultimately liable. Here, however, plaintiff (or her family, etc.) was not sold the chattel which caused her injury and hence there is no warranty.
It is true we have extended the benefit of an implied warranty beyond the immediate purchaser to those who could be fairly called indirect vendees of the product. (Greenberg v. Lorenz, 9 N Y 2d 195, supra.) Without stressing the weakness of the analogy that plaintiff here is the indirect vendee of the airplane and its parts, or the effect of the interposition between plaintiff and defendants of a federally regulated service industry of dominant economic and legal significance, it must be recognized that the true grounds of decision in a ease of this sort lie outside the purpose and policy of the Sales Act and must be evaluated accordingly. Most scholars who have considered this question acknowledge that the warranty rationale is at best a useful *440 fiction. (See, e.g., Prosser, The Assault upon the Citadel [Strict Liability to the Consumer], 69 Yale L. J. 1099; James, Products Liability, 34 Tex. L. Bev. 192.) If a strict products or enterprise liability is to be imposed here, this court cannot escape the responsibility of justifying it. We cannot accept the implication of the majority that the difference between warranty and strict products liability is merely one of phrasing.
Inherent in the question of strict products or enterprise liability is the question of the proper enterprise on which to fasten it. Here the majority have imposed this burden on the assembler of the finished product, Lockheed. The principle of selection stated is that the injured passenger needs no more protection. We suggest that this approach to the identification of an appropriate defendant does not answer the question: Which enterprise should be selected if the selection is to be in accord with the rationale upon which the doctrine of strict products liability rests?
The purpose of such liability is not to regulate conduct with a view to eliminating accidents,* but rather to remove the economic consequences of accidents from the victim who is unprepared to bear them and place the risk on the enterprise in the course of whose business they arise. The risk, it is said, becomes part of the cost of doing business and can be effectively distributed among the public through insurance or by a direct reflection in the price of the goods or service. As applied to this case we think the enterprise to which accidents such as the present are incident is the carriage of passengers by air — American Airlines. The fact that this accident was due to a defective altimeter should be of no legal significance to plaintiff absent some fault (negligence) on the part of Kollsman or Lockheed. Here, the dominant enterprise and the one with which plaintiff did business and relied upon was the airline.
If the carrier which immediately profited from plaintiff’s custom is the proper party on which to fasten whatever enter *441 prise liability the social conscience demands, enterprises which supply the devices with which the carrier conducts its business should not be subject to an action based on this theory. This seems most persuasive where the business that deals directly with the public is not merely a conduit for the distribution of the manufacturer’s consumer goods but assumes the responsibility of selecting and using those goods itself as a capital asset in the conduct of a service enterprise such as common carriage. In such a case the relationship between the assembler of these goods and the air traveller is minimal as compared to that obtaining between the traveller and the carrier. In a theory of liability based, not on the regulation of conduct, but on economic considerations of distributing the risk of accidents that occur through no one’s neglect, the enterprise most strategically placed to perform this function — the carrier, rather than the enterprise that supplies an assembled chattel thereto, is the logical subject of the liability, if liability there is to be.
Whatever conclusions may flow from the fact that the accident was caused by a defective altimeter should be merged in whatever responsibility the law may place on the airline with which plaintiff did business. To extend warranty law to allow plaintiff to select a defendant from a multiplicity of enterprises in a case such as this would not comport with the rationale of enterprise liability and would only have the effect of destroying whatever rights that exist among the potential defendants by virtue of agreement among themselves. If, on the other hand, plaintiff’s maximum rights lie against the carrier, the rules of warranty can perform their real function of adjusting the rights of the parties to the agreements through which the airline acquired the chattel that caused the accident. If, as we maintain in this case, the true theory relied on by plaintiff is enterprise liability, then the rights of those from whom compensation is sought, no less than of those who seek it, “ ought not to be made to depend upon the intricacies of the law of sales.” (Ketterer v. Armour * Co., 200 F. 322, 323.)
We are therefore of the opinion that any claim in respect of an airplane accident that is grounded in strict enterprise liability should be fixed on the airline or none at all. Only in this way do we meet and resolve, one way or another, the anomaly presented by the reasoning of the majority, which, through reliance *442 on warranty incident to sales, grants a recovery to a passenger injured through a nonnegligent failure of equipment but denies it to one injured through a nonnegligent failure of maintenance or operation.
Although no such claim is raised by the pleadings, as we stated earlier, it is clear that our cases limit the airline’s duty to that of due care. (McPadden v. New York Cent. R. R. Co., 44 N. Y. 478; Stierle v. Union Ry. Co., 156 N. Y. 70; Williams v. Long Is. R. R. Co., 294 N. Y. 318; Kilberg v. Northeast Airlines, 9 N Y 2d 34, supra.) It is this rule, avowedly formed to deal with the problem of accidents, that must be re-evaluated by those who would support the theory of strict enterprise liability. A stricter rule is not without precedent in this court .(Alden v. New York Cent. R. R. Co., 26 N. Y. 102, holding that the carrier ‘ ‘ must be held accountable, in every event, to furnish a road-worthy coach; and that, if the event proved it not to have been so, he must suffer the consequences ” [p. 104]; see, also, cases collected in McLean v. Triboro Coach Corp., 302 N. Y. 49). However, as long as our law holds a carrier chargeable only with negligence, what part of reason is it to hold to a greater duty an enterprise which supplied an assembled aircraft which was certified for commercial service by the Federal Aviation Agency?
Our reluctance to hold an air carrier to strict liability for the inevitable toll of injury incident to its enterprise is only the counsel of prudence. Aside from the responsibility imposed on us to be slow to cast aside well-established law in deference to a theory of social planning that is still much in dispute (Prosser, Torts [2d ed.], § 84; Patterson, The Apportionment of Business Risks through Legal Devices, 24 Colum. L. Rev. 335, 358; Pound, Introduction to the Philosophy of Law 100-104 [1954]), there remains the inquiry whether the facts fit the theory. It is easy, in a completely free economy, to envision the unimpeded distribution of risk by an enterprise on which it is imposed; but how well will such a scheme work in an industry which is closely regulated by Federal agencies? In consideration of international competition and other factors weighed by those responsible for rate regulation, how likely is it that rate scales will rise in reflection of increased liability? (See Pound, supra, pp. 102-103.) In turn, how likely is it that the additional risk *443 will be effectively distributed as a cost of doing business? Sucb questions can be intelligently resolved only by analysis of facts and figures compiled after hearings in which all interested groups have an opportunity to present economic arguments. These matters, which are the factual cornerstones supporting the theory adopted by the majority, aside from our view that they apply it to the wrong enterprise, are classically within the special competence of the Legislature to ascertain. For a court to assume them in order to support a theory that displaces much of the law of negligence from its ancestral environment involves an omniscience not shared by us. For a court to apply them, not to the enterprise with which plaintiff dealt and relied upon, or to the enterprise which manufactured the alleged defective part, but to the assembler of the aircraft used by the carrier, involves a principle of selection which is purely arbitrary.
Judges Dye, Fuld and Foster concur with Chief Judge Desmond ; Judge Burke dissents in an opinion in which Judges Van Voorbis and Scileppi concur.
Judgment modified in accordance with the opinion herein and, as so modified, affirmed, without costs.

 Edith Feis, for whose death this action is brought, will be referred to herein as plaintiff.

 In view of the ease with which lack of care can be brought to light through devices such as res ipsa loquitwr, any marginal increase in the stimulus to care would be clearly outweighed by the harshness of the means used to achieve it — the removal of due care as a defense. Prosser, The Assault upon the Citadel (Strict Liability to the Consumer), 69 Yale L. J. 1099, 1119. Apparently the majority agree since Kollsman, the actual manufacturer of the chattel that allegedly caused the accident, is not held liable.